John W. BODE and Toni Bode,
Plaintiffs–Appellees,

v.

UNITED STATES of America, Internal Revenue Service, Defendant–Appellant.

No. 89–6164.

United States Court of Appeals,
Fifth Circuit.

Dec. 27, 1990.

Henry K. Oncken, U.S. Atty., Houston, Tex., Christopher S. Cole, Atty., Tax Div., Dept. of Justice, Dallas, Tex., Kimberly S. Stanley, Gary R. Allen, Chief, Richard Farber, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

Edward D. Urquhart, Richard W. Paquette, Urquhart & Hassell, Tom Alexander, Houston, Tex., for plaintiffs-appellees.

Before JONES, DUHÉ, and WIENER, Circuit Judges.

PER CURIAM:

After an audit, the Internal Revenue Service (Service) assessed a deficiency against John and Toni Bode, plaintiffs-appellees (Taxpayers). The Taxpayers paid the deficiency and filed a refund suit in the district court against the defendant-appellant, the United States. The district court ruled for the Taxpayers on the merits and in addition, awarded attorneys' fees under 26 U.S.C. § 7430 for 600 hours at $150 per hour. The United States appeals, contesting both the number of hours and the hourly rate awarded, and the Taxpayers request an award of attorneys' fees for defending this appeal. We affirm in part, reverse in part, and remand in part.

## I.

The Taxpayers owned and operated a ranch prior to and during the years in question, 1982, 1983, and 1984. Their ranching activities included farming, auctioneering, horse breeding, and horse racing. The horse breeding and racing operation, by itself, had never generated a profit.

In April of 1985, the Service initiated an audit of the Taxpayers' joint tax returns for the years in question. The Service, as a result of that audit, disallowed deductions that the Taxpayers took for horse breeding and racing activities, claiming that those activities were not engaged in for profit. The Taxpayers paid the resulting deficiencies and filed the instant suit for refund.

The district court held that all of the ranch activities, including the horse-related activities, should be viewed together as one business, and that, as such, the Taxpayers' ranching business was profitable overall. Because the business had been profitable during each of the years in question, the district court ruled that the Taxpayers were entitled to deduct the losses generated by the horse-related activities from the gross income generated by the ranching business as a whole. The United States does not appeal that decision.

The district court also determined that the Taxpayers were eligible for an award of attorneys' fees under 26 U.S.C. § 7430. The United States does not appeal that holding either, but does appeal the quantum of the award. On the issue of attorneys' fees, the Taxpayers did not submit any documentary evidence showing the number of attorney hours billed, the rates at which the hours were billed, or the tasks performed. Instead, the Taxpayers introduced only expert testimony. Their expert, Bill Rosch, testified about (1) the total dollar amount of the invoice for the services rendered by one set of the Taxpayers' attorneys, (2) the billing rates for some of the Taxpayers' attorneys, (3) the qualifications and abilities of the Taxpayers' attorneys, and (4) the hourly rate that the court should award for reimbursement under section 7430. He did not testify about the total number of hours billed to the Taxpayers. Rather, he testified that the fee of one of the firms—Mr. Urquardt's firm—was "in the neighborhood of $119,000"; and that the estimated fee of the other firm—Mr. Alexander's firm—was $50,000.

The Taxpayers' expert also did not testify about the precise hourly rate charged by each attorney who rendered services to the Taxpayers. Instead, he testified that, at one time, one of the Taxpayers' attorneys may have been billing at $175 per hour, and that at some point, that rate changed to $250 per hour. The evidence also indicated that one of the Taxpayer's attorneys billed the time of an associate to the Taxpayers. The Taxpayers did not offer any evidence, however, about how many hours that associate billed or at what rate that associate was billed.

Because the expert based his testimony, in part, on his examination of the invoices that the attorneys sent to the Taxpayers, he was unsure what rate was used by each attorney at the firm. And, although he testified that the total fees were reasonable for a case of this type, he did not testify that the hours were reasonably expended.

The Service made no attempt to controvert the expert's testimony. Neither did it adduce any affirmative evidence of reasonable hourly rates for the geographic area of the trial, the reasonable number of hours for preparation and trial, or the relative complexity of the case.

The district court, without articulating its reasons, awarded 600 hours of attorney time at an hourly rate of $150. Both the number of hours and the hourly rate were substantially less than invoiced to the Taxpayers and testified to by their expert.

## II.

Section 7430 of the Internal Revenue Code provides:

(a) In any administrative or court proceeding which is brought by or against the United States in connection with the ... refund of any tax, ... the prevailing party may be awarded a judgment or settlement for—

. . . .

(2) reasonable litigation costs incurred in connection with such court proceeding.

26 U.S.C. § 7430(a)(2) (1988).

■ The United States contends that the district court's attorney fee award was excessive in two respects: (1) the number of hours—600; and (2) The hourly rate—$150. We review the overall amount of a prevailing party's attorney fee award under the abuse of discretion standard, *see Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983), and we review the district court's subsidiary findings of fact for clear error, *see Creske v. Commissioner*, 896 F.2d 250, 252 (7th Cir. 1990).

## A. The Number of Hours Awarded

■ The Taxpayers' evidence on the issue of the number of compensable hours is insufficient to support an award of 600 hours of attorney time for several reasons. First, the Supreme Court held that the party seeking reimbursement of attorneys' fees pursuant to 42 U.S.C. § 1988 in the context of civil rights litigation under 42 U.S.C. § 1983 has the burden of establishing the number of attorney hours expended, and can meet that burden only by presenting evidence that is adequate for the court to determine what hours should be included in the reimbursement.[1] *See Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. In determining the amount of an attorney fee award, courts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for non-compensable hours. *See, e.g., White v. City of Richmond*, 713 F.2d 458, 461 (9th Cir.1983) (noting that courts may exclude hours that are insufficiently documented and "should not award attorneys' fees unless the prevailing party presents sufficiently detailed records that the time expended and the need for services are clearly established"); *National Ass'n of Con-*

cerned Veterans v. Secretary of Defense, 675 F.2d 1319, 1327 (D.C.Cir.1982) (holding that "it is insufficient to provide the district court with broad summaries of work done and hours logged"). Although this Circuit held in *Alberti v. Klevenhagen*, 896 F.2d 927 (5th Cir.1990), that an application for attorneys' fees can succeed even if it is unsupported by the preferred method of contemporaneous time records, their absence was excused in that case by "an abundance of other evidence" supporting the number of hours claimed. *Id.* at 931. Even assuming that billing statements are not *required* under section 7430, we cannot overlook the insufficiency of the Taxpayers' evidence on the number of attorney hours.

Second, section 7430 does not permit recovery of fees for services performed prior to the preparation of the complaint. *See, e.g., Sliwa v. Commissioner*, 839 F.2d 602, 607 (9th Cir.1988); *Baker v. Commissioner*, 787 F.2d 637, 641 (D.C.Cir.1986). The Taxpayers produced absolutely no evidence from which the district court could have determined how many hours were devoted to compensable activities under *Sliwa* and *Baker*.

Third, the expert's testimony contains no statement on which the court could have relied in determining, as courts are required to do in setting attorneys' fees under 42 U.S.C. § 1988, that the total number of hours claimed were not only reasonable, but also that particular hours were reasonably expended. *See Alberti*, 896 F.2d at 932. Because the expert had not examined the billing records or any other document showing the tasks and services performed, he did not testify, and could not have testified, that the hours billed to the Taxpayers were reasonably expended.

Fourth, the expert's testimony did not provide any basis from which the district judge could have arrived at even a "ball park" figure of the actual number of hours billed. The expert testified that Mr. Urquardt's firm charged in the neighborhood

---

1. While not directly applicable to an attorney fee award under section 7430, section 1988 cases are at least instructive.

of $119,000. The expert did not testify as to the total number of hours billed or as to the precise hourly rate charged by each attorney who worked on the Taxpayers' case. Instead, he testified that at one time Mr. Urquardt's firm charged an hourly rate of $175 per hour, but the expert was unsure what rate was used by each attorney at that firm. We also know that Mr. Urquardt and his associate, Mr. Pacquette, worked on the case. We do not know, however, who else in his firm, if anyone, may have worked on it. We do not know how many hours anyone put in. We do not know what hourly rates are commonly billed by any of the persons who worked on the file.

Neither do we know whether anyone from Mr. Alexander's firm, other than Mr. Alexander, worked on the case. We have no idea how much time that firm put into the case or what its hourly rates are. We only have the expert's testimony that Mr. Alexander charges $5,000 a day for trial.

The Taxpayers suggest that their expert's testimony establishes that 680 hours were expended by Mr. Urquardt's firm on their case ($119,000 divided by $175 per hour). Even if the district judge arrived at the 600 hour figure that way, we cannot affirm the number of hours awarded because the evidence does not establish that all of the attorneys at Mr. Urquardt's firm were charging $175 per hour at all relevant times. In fact, the expert's testimony indicates that some of the attorneys may have been billing at $250 per hour (dividing by $250 per hour would yield a much smaller number of hours). Additionally, an associate who may have billed at a lower rate also worked on the case, yet the imputed calculation does not reflect a different rate for the associate's time. Neither does the calculation reflect the possibility that much of the time may have been billed at $250 per hour. Finally, the calculation offered by the Taxpayers does not take into account how many hours were billed by partners as opposed to associates.

 The Taxpayers argue, citing *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), that the Service has waived the right to complain about the quantum of attorneys' fees by failing to controvert the Taxpayers' evidence on the issue of attorneys' fees. *Blum*, in a footnote, declined to reach the merits of the petitioner's argument that the hours charged by the respondent's counsel were unreasonable because the "petitioner failed to submit to the district court any evidence challenging the accuracy and reasonableness of the hours charged. ... She therefore waived her right to an evidentiary hearing [and] to challenge in this Court the district court's determination that the number of hours billed were reasonable for cases of similar complexity." *Id.* at 892 n. 5, 104 S.Ct. at 1545 n. 5.

*Blum* is distinguishable from this case because here the Taxpayers failed to produce evidence in the first instance sufficient to establish the number of compensable hours of attorney time expended on this case. The United States was not required to put on any evidence challenging the reasonableness of the hours expended because the Taxpayers had failed to meet their initial burden of establishing the actual number of attorney hours.

The Taxpayers also rely on language in the opinion of this Court in *Powell v. Commissioner (Powell II)*, 891 F.2d 1167 (5th Cir.1990). In that case, we held that a district court erred in disregarding evidence of prevailing market rates that was uncontroverted by the Service. *See id.* at 1173. Our holding in *Powell II* is likewise distinguishable because there was no indication in that case that there was any problem with the sufficiency of the Taxpayer's evidence.

The Taxpayers argue that if this court cannot affirm the district court's award, we should remand for the district court to articulate its reasons for arriving at 600 hours of attorney time. *See Blanchard v. Bergeron*, 893 F.2d 87, 90 (5th Cir.1990) (rejecting a wholly conclusory decision by the district court because the appellate court had "no inkling why the court awarded about 100 hours of legal time, as opposed to 200 hours or 50 hours. On remand, the court should provide some expli-

cation for its choice of the reasonably necessary amount of hours."). We disagree. Because the only evidence which the district court could have used to calculate the number of attorney hours did not provide a reasonable basis from which to make this calculation, we must reverse the district court's award of 600 hours.

Although the district court erred in awarding 600 hours based on the evidence before it, that court may make an award of fees for the number of hours that it observed the Taxpayers' attorneys before it during the trial of the case. That court was, after all, its own "eye witness" of those hours. Thus, on remand, the district court should articulate on the record its reasons for the number of hours that it awards.

## B. *The Hourly Rate Awarded*

Section 7430 provides that "reasonable litigation costs" include:

> reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding, except that such fees *shall not be in excess of $75 per hour unless* the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate.

26 U.S.C. § 7430(c)(1)(B)(iii) (1988) (emphasis added).

Because we are reversing the award of 600 hours and remanding that issue for reconsideration in the district court, we also must address whether the district court's award of an hourly rate above the $75 per hour presumed statutory cap was proper. The United States argues that the Taxpayers failed to present any evidence of a "special factor." The Taxpayers counter that they established the existence of several "special factors" justifying the district court's award of an hourly rate in excess of $75 per hour: (1) they could not obtain

skilled counsel qualified to handle their refund suit at $75 per hour because theirs was not a routine tax case but rather a complex and unusual, if not unique, tax case; (2) their counsel possessed special skills and expertise in the subject matter that formed the basis of their refund suit; and (3) their counsel obtained exceptional results.

1. The Unavailability of Qualified Counsel at $75 per hour

The Taxpayers posit that because they could not obtain qualified counsel at the $75 per hour presumed statutory rate, they are entitled to an attorney fee award above that rate. The Supreme Court explained that the similarly worded exception for limited availability of qualified attorneys in the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2)(A)(ii),[2] cannot mean simply that lawyers skilled and experienced enough to try a particular case are in short supply and cannot be hired at $75 per hour. *See Pierce v. Underwood*, 487 U.S. 552, 571, 108 S.Ct. 2541, 2553, 101 L.Ed.2d 490 (1988). Also Congress did not intend that the market-minimum rate should govern instead of the presumed statutory rate if the national or local market rate was above the statutory cap. *See id.* at 572, 108 S.Ct. at 2553. The statutory exception for the limited availability of qualified attorneys for the proceedings involved "refers to attorneys having some distinctive knowledge or specialized skill *needful for the litigation in question*—as opposed to an extraordinary level of the generally lawyerly knowledge and ability useful in all litigation." *Id.* (emphasis added). Because the test for limited availability is couched in terms of a special expertise needful for the litigation in question, the Taxpayers' arguments under this issue are inexorably intertwined with their separately asserted argument that their counsel possessed special skills and expertise in the basic subject matter of their refund suit.

---

**2.** The EAJA provides that attorneys' fees "shall be based upon prevailing market rates for the kind and quality of the services furnished," but "shall not be awarded in excess of $75 per hour unless the court determines that an increase in

the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii).

### 2. Special Skill and Expertise

One of the Taxpayers' attorneys, Mr. Urquardt, was a specialist in the field of taxation. The Taxpayers urge that his specialty in tax law enabled him skillfully to coordinate with the other attorney on the cross-examination of the United States' lone witness, and to conduct with like skill the direct examination of another expert witness who testified about matters concerning both the Internal Revenue laws and certain principles of tax accounting. The United States contends that if a special expertise in tax law qualifies as a "special factor" under section 7430, which applies only to proceedings against the United States "in connection with the determination, collection, or refund of any tax," 26 U.S.C. § 7430(a), the exception would wholly swallow the rule because almost all attorneys seeking compensation under section 7430 possess an expertise in tax law.

The United States argues persuasively that Congress probably did not intend for a specialty in tax law to be a special factor [3] meriting an increase in the section 7430 statutory rate unless the particular nature of the litigation required a tax specialist. Applying the *Pierce* test, however, we note that the underlying merits of this case did require a distinctive knowledge of tax, a specialized tax litigation skill, and perhaps even a special knowledge of the quarterhorse industry.[4]

The record reflects that the judge was familiar with the $75 per hour statutory cap and with the necessity of finding a special factor to award fees above the cap. On the issue of a "special factor" within the meaning of section 7430, the Taxpayers' expert testified that "there would be a limited opportunity to hire qualified lawyers to handle a case of this nature for $75.00 an hour." He also testified that it is not possible to hire competent tax litigators in the Houston area for less than $5,000 per day of trial. The United States did not controvert this evidence.

The district court did not articulate the section 7430 special factors upon which it relied. Nevertheless, the inference from the record is inescapable that the judge found, based on the uncontroverted testimony of the limited availability of qualified counsel, and, presumably, on his own experience and knowledge, that special factors under section 7430 existed and that they were sufficient to justify a departure from the $75 per hour cap. Clearly, counsel's expertise in tax law, in and of itself, is not a special factor warranting a fee award in excess of $75 per hour under section 7430. *See Mattingly v. United States,* 711

---

**3.** Very few cases have been decided under the current version of section 7430. The previous version of the statute did not have a recommended cap of $75 per hour, and instead, provided a cap of $25,000 for the total amount recoverable. 26 U.S.C. § 7430(b)(1) (1982). Thus, courts deciding cases under the previous version were not bound to determine whether a "special factor" existed meriting a rate above $75 per hour, but instead, merely had to determine whether the requested hourly rate was *reasonable.* This Court's decision in *Powell v. Commissioner (Powell II),* 891 F.2d 1167 (5th Cir.1990), is distinguishable on this basis. *Powell II* held that the tax court erred in limiting the hourly rate to $75. The tax court indicated that it reduced the requested hourly rate to $75 because the case involved a rather routine tax shelter settlement. This court, in rejecting that reasoning, said that "routine" services of that nature are not provided at "routine" legal rates. *Powell II,* 891 F.2d at 1173. Although this Court observed in *Powell II* that "[t]ax practice is a specialty area in which relatively few attorneys participate," *id.,* that case does not stand for the

proposition that an expertise in tax would qualify as a "special factor" under the current version of 7430. *See id.* at 1173 n. 6. Thus, other cases decided under the previous version of 7430 indicating that a specialty in tax law merits an upward adjustment in the hourly rate, *see, e.g., Harding v. Manners,* 646 F.Supp. 277, 280 (N.D.Ga.1986), are inapplicable both because those cases merely indicated that a speciality in tax could be considered in determining a *reasonable* hourly rate, and because those cases did not apply the current statutory test.

**4.** The Taxpayers argue that because their other attorney, Mr. Alexander, possessed knowledge, familiarity, and experience with the Texas quarterhorse industry, his expertise qualifies as a special factor under section 7430. They argue that this knowledge was essential for Mr. Alexander to effectively present what the Taxpayers' horse program was trying to accomplish. We do not reach this issue because the taxpayers failed to present any evidence to establish that attorneys with an expertise in the horse business were unavailable for the $75 per hour rate.

F.Supp. 1535, 1542 (D.Nev.1989); *accord Kim v. United States,* 709 F.Supp. 932, 933 (N.D.Cal.1989) (rejecting an hourly rate of $150 under the current version of section 7430 for an attorney with a tax specialty in a case that contested the tax-deferred status of an exchange of property and noting that "[w]e presume that Congress was aware that the prevailing rates for tax attorneys in metropolitan areas normally exceed $75.00 per hour"). The district court in this case, however, could have found that a special skill and expertise in tax were, under *Pierce,* "needful for the litigation in question." *Pierce,* 487 U.S. at 572, 108 S.Ct. at 2554.

▮ Our decision today is distinguishable from *Mattingly* and *Kim* because we are not holding that a specialty in tax law, whether or not the underlying merits of the tax case actually require a tax specialist, automatically constitutes a special factor under section 7430. We do find, however, that the uncontroverted evidence is sufficient to establish that the Taxpayers could not have obtained qualified attorneys who could handle the complex nature of the underlying merits *in this case*—attorneys with a special expertise in tax law—for substantially less than the hourly rate of $150 awarded by the district court, and certainly not for $75 per hour. We do not find that the district court erred in departing from the statutory cap of $75 per hour for Mr. Urquardt's time.[5]

▮ Moreover, because the United States did not controvert the expert's opinion on the unavailability of qualified counsel for this type of case, the United States, under *Blum v. Stenson,* has waived this factual issue and cannot now contend that the taxpayers could have obtained qualified legal counsel for less. 465 U.S. 886, 892 n. 5, 104 S.Ct. 1541, 1545 n. 5, 79 L.Ed.2d 891

(1984); *see also Powell v. Commissioner* (*Powell II* ), 891 F.2d 1167, 1173 (5th Cir. 1990). Based on the record, we find that this conclusion was not clearly erroneous. Because section 7430 specifically identifies limited availability of qualified counsel as a special factor justifying a departure from the statutory rate, the district judge on remand may award an hourly rate above the statutory cap for the hours that Mr. Urquardt spent during trial.[6]

▮ Additionally, the Taxpayers suggest that Mr. Alexander's special knowledge about the quarterhorse industry qualifies as a special factor meriting an hourly rate above the $75 per hour statutory rate. Special legal expertise about the quarterhorse industry may well have qualified as a special factor, but the Taxpayers not only failed to present any evidence to establish that they could not have hired an attorney with quarterhorse industry expertise for $75 per hour, but they also failed to present any evidence to establish that Mr. Alexander possessed such special knowledge. The only evidence about Mr. Alexander's special skill indicated that he was a trial specialist and that an attorney with his skill could not have been hired for less than $5,000 per day of trial. We find the evidence inadequate to support findings that Mr. Alexander possessed a special knowledge of the Texas quarterhorse industry and that his special knowledge of the quarterhorse industry qualified as a special factor, and we hold that a general expertise in trial work is not a special factor under section 7430. *See Pierce,* 487 U.S. at 572, 108 S.Ct. at 2554.

### 3. Exceptional Results

To the extent that exceptional results can be a special factor in a section 7430 case,

---

5. On remand, however, the district court should articulate the special factor upon which it relied in departing from the statutory cap. *See Baker v. Bowen,* 839 F.2d 1075, 1082 (5th Cir.1988) (holding that increases over the statutory cap should be allowed only after the court makes a "particularized and careful analysis of the individual facts of the case").

6. The record before this court does not disclose if any of Mr. Urquardt's associates participated at trial. If any attorneys from Mr. Urquardt's firm, other than Mr. Urquardt, did participate during the trial, their time should be reimbursed at the presumed statutory rate of $75 per hour since the Taxpayers produced no evidence that anyone other than Mr. Urquardt had a special knowledge in the field of tax that was needful for the litigation in question.

the district court could find, without committing reversible error, that the results obtained in this case meet that definition. Not only did the Taxpayers' attorneys achieve a total victory on the merits in the trial court, they also were able to convince the district court that the Service's position was "not substantially justified." If, on remand, the district court does find that the results obtained in the case were exceptional, and that the services of Mr. Alexander were instrumental and necessary in obtaining those results, the court in its discretion may depart from the statutory cap and articulate its reasons for doing so, as in the case of Mr. Urquardt, in awarding fees for the time that Mr. Alexander spent before the court.

## C. Attorneys' Fees for this Appeal

■ The Taxpayers ask for an additional award of attorneys' fees for this appeal, arguing that the United States' unreasonable position in the underlying litigation forced them to incur the additional cost of defending this appeal. When the government's underlying position is "not substantially justified," the Taxpayer is entitled "to recover *all* attorney's fees and expenses reasonably incurred in connection with the vindication of its rights, including those related to any litigation over fees on appeal." *See Powell II*, 891 F.2d at 1172 (emphasis added). *Powell II* has been modified by the Supreme Court's holding in *Commissioner, INS v. Jean*, 495 U.S. ―― n. 10, 110 S.Ct. 2316, 2321 n. 10, 110 L.Ed.2d 134, 145 n. 10 (1990): although attorneys' fees may be awarded for all aspects of litigation, including appeal, fees for defending an appeal "should be excluded to the extent that the applicant ultimately fails to prevail in such litigation."

To award attorneys' fees for this appeal, this court need only be satisfied that the district court's determination that the United States' position in the underlying litigation was "not substantially justified," which was a prerequisite to its award of attorneys' fees for the litigation below, was

not an abuse of discretion. *See Powell II*, 891 F.2d at 1172. We need not make our own determination that the government's appellate position was not substantially justified once the threshold finding has been made at the trial court. *See Jean*, 495 U.S. at ――, 110 S.Ct. at 2315–16, 110 L.Ed.2d at 143–45.

In light of the failure of the United States to appeal on the merits, we find that the district court did not abuse its discretion in determining that the United States' position was not substantially justified. We must, however, make our own determination whether the Taxpayers are "a prevailing party" on appeal. *See id.* And we do so find. Although the Taxpayers have not prevailed on every issue on this appeal, these losses are "not of such magnitude as to deprive [them] of prevailing party status." *Leroy v. City of Houston (Leroy V)*, 906 F.2d 1068, 1082 n. 24 (5th Cir.1990). Nonetheless, because the Taxpayers are only partly successful on appeal, it is not proper to reimburse them for 100% of their appellate fees. *See Jean*, 495 U.S. at ――, 110 S.Ct. at 2321 n. 10, 110 L.Ed.2d at 145 n. 10. On remand, the district court should take limited evidence on this issue to determine how much of the time billed to the Taxpayers for the appellate work was devoted to those issues on which the Taxpayers prevailed.[7] Because the entirety of the remand proceedings will be devoted to matters on which the Taxpayers prevailed, there need be no such allocation of the attorneys' fees which the district court awards to the Taxpayers for the reasonable costs of their attorneys' services therein.

Under different circumstances this court would set the appellate attorney fee award, as we did in *Davis v. Board of School Commissioners*, 526 F.2d 865, 868 (5th Cir. 1976) and in *Leroy V*, 906 F.2d at 1806. We decline to set them here, however, because we do not have before us sufficient evidence upon which to determine such an award.

We therefore remand on that issue for the district court to set attorneys' fees for

---

**7.** Because the issues that the Taxpayers won and those that they lost are so intertwined, a good

faith allocation by the Taxpayers' attorneys as to the number of compensable hours may suffice.

defending this appeal. In determining the appropriate attorneys' fees to award the Taxpayers for defending this appeal, as well as for participating in the proceedings on remand, the district court will be limited to the $75 per hour statutory rate. We can envision no reason why the Taxpayers would require either a tax, quarterhorse, or trial specialist to defend an appeal or participate in the remand proceedings on the sole issue of the quantum of attorneys' fees.

■ If on remand, the district court determines that no special factor exists justifying a departure from the $75 hourly cap

for some attorney hours, it should also consider whether, for those hours for which it makes an award of $75 per hour, an "increase in the cost of living ... justifies a higher rate." [8] 26 U.S.C. § 7430(c)(1)(A)(ii)(III) (1988). In saying that the district court should consider a cost of living adjustment, we do not decide that any such adjustment must be awarded or what amount, if any, is ultimately appropriate.

### III.

On remand, the district court should award attorneys' fees to the Taxpayers

---

**8.** The Internal Revenue Code, the Treasury Regulations, and the Committee Reports are silent as to which particular index should be used in making such an adjustment, so the district court has some flexibility in that regard. Certainly the district court could not be faulted if it should select an appropriate inflation index, such as the United States Department of Labor's Consumer Price Index for All Urban Consumers (CPI–U) published by the Bureau of Labor Statistics. *See, e.g., Johnson v. Sullivan,* 1990 WL 180588, 1990 LEXIS 20547 (8th Cir.1990) ("We believe that the Consumer Price Index constitutes "proper proof" of the increased cost of living since the EAJA's enactment and justifies an award of attorney's fees greater than $75 per hour in these cases."); *Allen v. Bowen,* 821 F.2d 963, 967 (3d Cir.1987) (expressly approving the use of the Consumer Price Index in determining EAJA cost-of-living adjustment (citing *Natural Resources Defense Council v. EPA,* 703 F.2d 700, 713 (3d Cir.1983))); *Ramon–Sepulveda v. INS,* 863 F.2d 1458, 1463, 1464 n. 6 (9th Cir.1988) (using the CPI–U to calculate increase in the cost of living in an EAJA case).

Since oral argument, the government has invited our attention to a recent decision on the issue of the appropriate date that a court should use as the *base date* for determining a cost-of-living increase under section 7430. *Buchanan v. United States,* No. 89–969–PA (D.Ore. Nov. 11, 1990). In *Buchanan,* the court adjusted the $75 per hour cap for an increase in the cost of living and used March 1, 1983 as the base date. That court reasoned that March 1, 1983 was appropriate because it was the effective date of the original version of section 7430. Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, § 292, 96 Stat. 324, 572 (1982). We disagree. The original version of section 7430 simply set a $25,000 limit on the amount that could be awarded for all litigation costs—no hourly cap and no cost-of-living adjustment. The amended version of section 7430, which for the first time provided a $75 per hour cap and a cost-of-living factor, and which deleted the aggregate limit of $25,000, became effective on

January 1, 1986. Tax Reform Act of 1986, Pub.L. No. 99–514, § 1551, 100 Stat. 2085, 2752 (1986). Although the original version of section 7430 did not provide for an adjustment for an increase in the cost of living, the *Buchanan* court held that a cost-of-living increase should be measured from the effective date of the original version "[b]ecause Congress always intended that taxpayers receive awards of reasonable attorneys fees [and because] only the method guaranteeing such reasonableness has changed." *Id.*

We decline to follow the *Buchanan* court's choice of March 1, 1983 as the base date for determining a cost-of-living increase under section 7430. Congress amended the current version of the statute, which contains the $75 hourly cap, to be effective in 1986, not in 1983. Just as the *Buchanan* court rejected using October 1, 1981, the effective date of the similarly-worded EAJA, as the base date "because section 7430 did not even exist on October 1, 1981," *id.,* we reject using the effective date of the older version of the statute to increase the § 75 hourly cap because that version of the statute contained no cap in 1982 when it was drafted or in 1983 when it became effective. Rather, Congress set the hourly rate in 1985 when it drafted the current version of section 7430 to become effective on January 1, 1986. Therefore, the effective date of the current version of the statute is the appropriate base date for a cost-of-living adjustment, should the district court on remand determine that an increase in the cost of living justifies a higher rate for those hours that otherwise would be compensated at $75 per hour. Were we to follow *Buchanan,* we would produce the anomalous result of applying a two years and 10 months cost-of-living increase to the maximum statutory rate on the very first day that the $75 hourly rate became effective. If Congress had intended that result, it certainly would have specified the greater hourly rate produced by applying such an inflation adjustment to $75 per hour, not by specifying $75 as the rate as of January 1, 1986.

based solely on the time that the district court observed the attorneys spend during trial before it, and should explicate special factors justifying its departure from the statutory hourly rate. That court should also determine how many billable hours the Taxpayers' attorneys devoted to the issues on which the Taxpayers prevailed on appeal, and likewise how many billable hours they devoted to proceedings on remand. In awarding those fees, the district court should also articulate its reasons for the award at each stage. For the foregoing reasons, this case is

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED IN PART.