**Peter McCONAUGHY, et ux.**

v.

**UNITED STATES of America.**

**Civ. A. No. WN–91–2874.**

United States District Court,
D. Maryland.

July 22, 1993.

William Rowan Bernetich, Rockville, MD, and Robert P. Brophy, Bel Air, MD, for plaintiffs.

Richard D. Bennett, U.S. Atty. for the D. Maryland, and Larry D. Adams, Asst. U.S. Atty. for the D. Maryland, and Gregory S. Hrebiniak, Trial Atty., Tax Div. of the U.S. Dept. of Justice in Washington, DC, for Government.

### *MEMORANDUM*

NICKERSON, District Judge.

Currently pending before the Court is Plaintiffs' Motion for Attorneys Fees. Paper No. 13. The government has opposed the motion (Paper No. 15), Plaintiffs have replied (Paper No. 16), and both parties have submitted supplemental memoranda in response to the Court's requests for additional information. The Court held a hearing on the motion on July 1, 1993. Upon a review of the pleadings, the applicable case law, and the arguments of counsel at the hearing, the Court determines that Plaintiffs' motion should be granted in part and denied in part.

### *BACKGROUND*

Plaintiffs' tax problems began in 1984. They received a pension distribution, a large portion of which they erroneously believed to be non-taxable. As a result, the IRS notified them that their tax liability was significantly higher than what they had reported. The taxpayers agreed that they had made a mistake, but they filed an amended tax return, via form 1040X, in January, 1990, seeking an abatement of part of the amount that the IRS said they owed. The basis for the request was that the IRS had made a mathematical error in the calculation of Plaintiffs' taxable income. The abatement was granted on May 14, 1990.

In April, 1990, before the abatement request pursuant to the original 1040X was granted, the taxpayers filed amended 1040X returns for several tax years, including 1984, in which they made two requests. First, they requested another adjustment to the amount of tax owed on the pension distribution because they discovered that they were eligible for a special ten-year averaging election that would have reduced their taxable income for 1984. They also requested an investment tax credit ("ITC"), based on expenditures made in 1986, which they wanted to carry back to the 1984 tax year.

On June 27, 1990, the IRS sent a letter to the taxpayers saying that they would have to submit form 843 and pay their outstanding balance for their claim to be considered. The parties do not dispute that the outstanding tax on the pension distribution had to be paid before the refund request could be processed. Plaintiffs argue, however, that this letter constitutes an erroneous rejection of the ITC carryback claim. The ITC claim had not been submitted previously to the IRS. The only purpose of the ITC was to reduce the tax liability already paid. Therefore, Plaintiffs contend, there was no outstanding balance owed to the government based on the ITC that would preclude processing the request.

Nevertheless, on August 3, 1990, the taxpayers paid the 1984 balance, and on September 11, 1990 submitted the required form 843, along with copies of the previously-filed amended 1040X forms. The IRS maintains that this is the point at which the taxpayers had submitted the appropriate forms and taken the necessary steps for the IRS to act on both requests. Although the taxpayers argue that the ITC claim could have been resolved based on the earlier filing, they agree that the pension refund claim was not ready for processing until September 11, 1990.

Between September 11, 1990, and September 13, 1991, it is not clear what action, if any, the IRS took with respect to the claims. Plaintiffs contacted the IRS on several occasions asking for a decision on their refund requests. The IRS stated in April, 1991 that action would be forthcoming in thirty days. In May, 1991, the IRS contacted the taxpayers, indicating that the claim had been referred to the audit department and that review would take an additional forty-five days.

On June 24, 1991, Plaintiffs contacted the IRS requesting action within fifteen days and indicating that they would consider litigation if no action was forthcoming after that period. At the hearing, counsel for Plaintiffs stated that the IRS contacted Plaintiffs during July, 1991 asking for five additional weeks in which to process the claim.[1]

The notes from the revenue agent assigned to the case reveal that, as of September 13, 1991, the IRS had concluded that Plaintiffs were entitled to their refund on the pension distribution taxes because they were entitled to the special election. The notes indicate that additional verification would be necessary to process the ITC carryback claim. Thus, on September 17, 1991, approximately three weeks after the IRS' latest request for extra time had expired, the IRS contacted the taxpayers for additional information, ostensibly to substantiate the outstanding ITC claim. Plaintiffs point out that the documents requested would not have substantiated the ITC claim.[2] In addition, the Court notes that Plaintiffs did not know of the revenue agent's position until the notes were produced in discovery. Thus, Plaintiffs had no way of knowing that the pension distribution claim had been determined in their favor at that point.

█ At this point, the taxpayers determined that there were only six months remaining in which to file suit to recover their refunds, based on the date the IRS acknowledged receipt of the first amended 1040X in April, 1990. The government disputes this calculation of the statute of limitations period, but at any rate, Plaintiffs believed they were facing an impending limitation on their action and decided to file suit. The instant action was filed on October 4, 1991. Plaintiffs also notified the IRS that they had filed suit and that they would not provide additional information unless requested by IRS counsel. The IRS referred the case to the Justice Department for handling and mailed the taxpayers a letter indicating that their claims were being denied because suit had been filed.[3]

When counsel for the government took over the case, he was required to conduct his own review of the situation. He requested discovery from Plaintiffs and ultimately determined that the refund on the pension distribution should be granted. He also requested information to verify Plaintiffs' entitlement to the ITC carryback. Plaintiffs' answers to interrogatories were served in August, 1992, approximately ten days before the close of discovery. This was the first time the government had the appropriate information to support the ITC carryback claim. The IRS ultimately agreed to concede both of the taxpayers' claims.

Plaintiffs also requested discovery from the government. Interrogatories were propounded, and Plaintiffs twice requested admissions from the IRS. Plaintiffs believed that the government was not cooperating in discovery, and they filed a motion to compel in October, 1992. Plaintiffs simultaneously filed a motion for summary judgment. At the hearing on the instant motion, however, it became apparent that these motions were essentially unnecessary because by the time they were filed, the IRS already had conceded the case and the parties were in the process of negotiating the terms of a stipu-

---

1. Although there is no documentation in the file to support this assertion, it was not challenged by counsel for the government.

2. The revenue agent requested information pertaining to the original abatement granted May 14, 1990, which related solely to the pension distribution. The agent also requested copies of information previously mailed to or from the IRS, which were documents already in the IRS' possession.

3. Plaintiffs argue that this letter "denying" their claim constitutes an unjustified position on the part of the IRS because the notes of September 13 concede at least the pension distribution aspect of their claim. Plaintiffs misconceive the purpose of the letter. The IRS is not permitted to act administratively once an action has been filed in federal court. *See* 26 U.S.C. § 7122(a). As this Court reads the letter, the IRS was merely informing the taxpayers that their claim was "denied," in the sense that no further action could be taken by the IRS, because the taxpayers had filed suit. In this Court's view, this letter does not constitute an inconsistent or unjustified position on the part of the IRS.

lated judgment.[4]

### ANALYSIS

■ Attorneys fees can be awarded in tax cases when three conditions are met: (1) the taxpayer substantially prevails on his or her claims; (2) the government's position was not substantially justified; and (3) the taxpayer exhausts administrative remedies prior to bringing suit.[5] In determining if the government's position is substantially justified, the Court looks not only to the IRS' position in litigation, but also to the position it took during administrative processing of the claim. *See* 26 U.S.C. § 7430.[6]

There is no doubt that plaintiffs in this case prevailed on their claims because the government ultimately conceded the case. Plaintiffs claim that the IRS acted improperly by failing to give them their refund after the revenue agent determined that they were entitled to it, by asking repeatedly for documents that already had been sent to the IRS, and by stalling until the looming statute of limitations forced them to file suit. The government argues that its position was substantially justified and that plaintiffs failed to exhaust their administrative remedies.[7]

■ The Court finds that Plaintiffs did exhaust their administrative remedies. Although the parties disagree about whether the IRS could have acted on the ITC claim based on the April, 1990 filing, they agree that by September 11, 1990 at the latest, Plaintiffs had filed the appropriate forms for processing both of their refund claims. Plaintiffs argued at the hearing that filing form 843 and waiting a reasonable amount of time satisfied the exhaustion requirement. The government has not identified any additional steps the taxpayers should have taken to exhaust their administrative remedies. Although taxpayers ordinarily must avail themselves of IRS internal appeal procedures to be entitled to attorneys fees, *see Kenlin Industries, Inc. v. United States*, 927 F.2d 782 (4th Cir.1991), in this case there was no initial decision from the IRS either granting or rejecting their requests for the taxpayers to appeal. Accordingly, the Court finds that waiting a year after filing the request satisfies the exhaustion requirement, particularly after the IRS failed to meet the deadlines for action it set for itself during the spring and summer of 1991.[8]

■ The next question is when, if ever, the government's position was substantially

4. The motions also suffered from several deficiencies. The motion for summary judgment, which was a one-page document, was not supported by a memorandum of law as required by Local Rule 105 subd. 1. The motion to compel was not in compliance with Local Rules 104 subd. 7 and 104 subd. 8 governing discovery motions. Thus, it is not clear that these motions were ever properly before the Court for consideration. Moreover, this Court is not convinced that the motion to compel presented a request upon which the Court could have acted, at least to the extent that Plaintiffs sought to compel factual admissions. A party ordinarily either admits or denies the relevant facts but cannot be compelled to admit facts that he or she believes to be in dispute.

5. Certain net worth limitations also apply, but it is undisputed that the taxpayers in this case do not have net worth in excess of the statutory limits.

6. The attorney fee statute has been amended several times, and not all versions of the statute permit a court to look beyond the government's posture during litigation to determine if the government was substantially justified. All administrative action in the instant case began after November 10, 1988, after the latest revision of the statute, such that the administrative posture of the IRS may be considered in determining whether the IRS was substantially justified.

7. The Court notes that the government did not object to the number of hours expended or the hourly billing rates claimed by Plaintiffs' attorneys. The government relies exclusively on the position that Plaintiffs are not entitled to any fees whatsoever.

8. If the Court accepts the government's argument that the IRS' request for information in September, 1990 was intended to substantiate the ITC claim, it could be argued that Plaintiffs have not exhausted administrative remedies with respect to that claim because they refused to provide the information. *Kenlin Industries, Inc. v. United States*, 927 F.2d 782 (4th Cir.1991); 26 C.F.R. § 301.7430–1(f)(3)(ii) (administrative remedies not exhausted when the party's own actions, such as failing to supply information, prevent the IRS from issuing a notice that a refund claim has been disallowed). Nevertheless, this does not change the result in the instant case. As discussed in the text *infra*, the Court will deny attorneys fees on the ITC claim because it finds that the government's position regarding that claim was substantially justified.

justified. The Court finds that the government was not substantially justified in failing to act on Plaintiffs' claims for over a year, and then acting by requesting documents that either were not responsive to the outstanding issue or were already in the IRS' possession. *See Bayer v. Commissioner*, 61 T.C.M. (CCH) 2980, 1991 WL 108761 (U.S.T.C.1991) (awarding attorneys fees because the government's failure to act for six months after appropriate information had been obtained was unreasonable and not substantially justified).

The government argues that the taxpayers miscalculated the statute of limitations and had plenty of time left in which to file any claim. This argument lacks merit for two reasons. First, this Court is not convinced that a taxpayer must wait until the statute of limitations is about to expire before bringing suit when the IRS has failed to take any action on a claim for over a year. Second, the government's argument focuses on the taxpayer's position, rather than the position of the IRS. The relevant inquiry is whether the IRS' position was substantially justified. The fact that more time may be available under the statute of limitations does not render the IRS' position in failing to act substantially justified.

■ Although the Court finds that the IRS was not substantially justified in delaying resolution of Plaintiffs' claims, counsel for the government has convinced the Court that the IRS was justified with respect to the substance of the ITC claim. The IRS did not receive adequate substantiation to justify the ITC refund until Plaintiffs' answers to interrogatories were filed on August 4, 1992. The government's position in requiring documentation for the claim was substantially justified. *See Bayer*, 1991 WL 108761 ("Whenever there is a factual determination, [the IRS] is not obliged to concede the case until [it] receives the necessary documentation to prove the taxpayer's contention.") (citations omitted).

Nevertheless, because the IRS' unreasonable delay is what caused the taxpayers to file suit, they will be allowed to recover some, but not all, of their attorneys fees and litigation expenses. In determining how much in attorneys fees Plaintiffs should recover, the Court is guided by the principles for awards of attorneys fees under 42 U.S.C. § 1988. *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir.1990) (per curiam) (applying 42 U.S.C. § 1988 standards in analyzing a claim for fees under 26 U.S.C. § 7430). The Supreme Court has held in the context of a § 1988 fee petition that a reduction in the amount of fee is appropriate when the hours claimed are excessive or not reasonably necessary, when the time was spent on claims on which the party did not prevail, or when the fee applicant has not adequately documented the number of hours. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 437–38 & nn. 12–13, 103 S.Ct. 1933, 1940, 1941–42 nn. 12–13, 76 L.Ed.2d 40 (1983). In determining the appropriate amount of attorneys fees, the district court has the discretion either to "attempt to identify specific hours that should be eliminated" or to "simply reduce the award" through an across-the-board reduction. *Id.* at 436–37, 103 S.Ct. at 1941.

■ In this case, the Court finds that a reduction in the amount of fees requested is appropriate for several reasons. First, although the fee petition includes both paralegal and secretarial time, the Court finds that these charges are not recoverable. As the *Bayer* court noted, "overhead and secretarial fees are traditionally covered by attorneys' fees and are not charged separately." 1991 WL 108761; *see also Bode*, 919 F.2d at 1047–48 (discussing fees for attorney time only); *United States v. Sam Ellis Stores, Inc.*, 768 F.Supp. 286, 290 (S.D.Cal.1991) (calculating fees only for time billed by attorneys). Accordingly, secretarial and paralegal time, as well as charges for facsimile transmissions, photocopies, travel expenses such as parking (as opposed to attorney travel time), postage, courier, interest, telephone, and other overhead costs will be entirely eliminated from the fee calculation.

The number of hours billed by the attorneys themselves must also be reduced. Because the government was justified in its position regarding the substance of the ITC claim, time spent pursuing this claim is not compensable under 26 U.S.C. § 7430. Accordingly, a significant reduction in the num-

ber of hours claimed in the instant motion is warranted.

■ In addition, a reduction for the amount of time devoted to Plaintiffs' motions is appropriate. As noted above, two of Plaintiffs' motions were not reasonably necessary and were not in compliance with the Local Rules of this Court. The Motion for Attorneys Fees itself is highly confusing and did not adequately explain why Plaintiffs are entitled to fees. The confusing nature of this pleading led the Court to repeatedly request additional information and briefing from the parties that would have been unnecessary if Plaintiffs had adequately explained their position in the original fee petition.

Moreover, the billing records submitted with the fee petition leave something to be desired. The Court is unable to determine with much certainty how much time was devoted to any given task. Thus, it is difficult to tell if any of the hours were excessive, redundant, or devoted to noncompensable activities, or how many hours were spent on the ITC claim. *See Hensley*, 461 U.S. at 437–38 nn. 12 & 13, 103 S.Ct. at 1941–42 nn. 12 & 13 (district court would not abuse discretion for reducing fee awards not supported by adequate documentation); *Bode*, 919 F.2d at 1047 (reversing award of attorneys fees because Plaintiffs failed to adequately document hours expended); 2 Martin A. Schwartz & John E. Kirlin, *Section 1983 Litigation: Claims, Defenses and Fees* § 20.14 (2d Ed.1991) (courts may reduce fee awards if not properly substantiated). Robert P. Brophy submitted an affidavit detailing the amount of time he spent on this case without supplying any billing records.

In light of these considerations, the Court finds that the number of hours billed by the attorneys should be reduced by sixty-five percent. Accordingly, tax counsel William R. Bernetich will be compensated for 66.15 of the 186.15 hours he has claimed, and another attorney from his firm identified only as W. Eddleman will receive fees for 7.56 of the 21.6 hours claimed. Co-counsel Mr. Brophy's time will be reduced by the same percentage, from 34 hours to 11.9 hours of compensable time.

The Court must next determine the appropriate rate for compensating Plaintiffs' attorneys. Mr. Brophy requests only the statutory amount of $75 per hour. Mr. Bernetich specializes in the area of taxation and is a Certified Public Accountant as well as an attorney. He has convinced the Court that, based on the complexity of the issues in this case and the prevailing rates for attorneys in the Washington metropolitan area in which he ordinarily practices, he should be compensated at a higher rate. The Court determines that Mr. Bernetich's charge of $150 per hour is appropriate. *See Bayer*, 1991 WL 108761; *Bode*, 919 F.2d at 1049–52; *Sam Ellis Stores*, 768 F.Supp. at 290. No qualifications for attorney W. Eddleman have been provided. Accordingly, the Court will compensate this individual at the statutory $75 rate.

Using these hourly rates, the Court calculates the attorneys fees as follows. Mr. Bernetich will receive $9,772.50 (65.15 hours × $150/hour), and W. Eddleman will receive $567 (7.56 hours × $75/hour), for a total of $10,339.50 for Mr. Bernetich's law firm. Mr. Brophy will receive $892.50 in fees (11.9 hours × $75/hour). In addition, Plaintiffs will be reimbursed for $165.71 for filing fees and the cost of service of process. *See Bayer*, 1991 WL 108761 (although law firm overhead costs cannot be recovered under 26 U.S.C. § 7430, taxpayers may recover filing fees and other costs directly associated with litigation). The total awarded pursuant to the fee petition is $11,397.71.

A separate Order will issue.