# United States Court of Appeals
## For the Eighth Circuit

––––––––––––––––––––––––––

No. 18-2343

––––––––––––––––––––––––––

Stefan A. Tolin

*Petitioner*

v.

Commissioner of Internal Revenue

*Respondent*

–––––––––––––

Appeal from The United States Tax Court

–––––––––––––

Submitted: January 15, 2019
Filed: July 3, 2019

–––––––––––––

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.

–––––––––––––

SMITH, Chief Judge.

Taxpayer Stefan Tolin prevailed in a deficiency proceeding before the United States Tax Court.[1] He then sought an award of attorney's fees. The tax court granted the award, but it denied Tolin's request for an enhancement to the hourly fee rate. Tolin received an award of attorney's fees at the statutory rate of $180 per hour. *See*

––––––––––––––––––––

[1]The Honorable Joseph H. Gale, United States Tax Court Judge.

26 U.S.C. § 7430. The tax court also reduced the number of compensable hours. On appeal, Tolin claims the tax court erred by reducing the hours claimed and by calculating the award using the statutory rate. We affirm.

## I. *Background*

Tolin, a Minnesota attorney, owned a thoroughbred horse racing and breeding business. Tolin's business primarily sold breeding rights for his prized stallion, Choosing Choice. Though he lived in Minnesota, Tolin boarded Choosing Choice in Louisiana under the care of thoroughbred industry professionals. He generally conducted his business via telephone, but he also prepared marketing materials and made several trips to Louisiana each year to promote the stallion among breeders there.

In 2008, the Commissioner of Internal Revenue ("Commissioner") issued Tolin a notice of deficiency for his 2002, 2003, and 2004 federal income tax returns. The notice informed him that the net losses he had claimed for his thoroughbred business during those years were disallowed as "passive activity losses" under 26 U.S.C. § 469. Section 469 prohibits taxpayers from offsetting their active income with losses incurred through business activities "in which the taxpayer does not materially participate." *Id.* § 469(c)(1)(B). After receiving the notice, Tolin hired Richard Craigo, a California attorney who specializes in tax issues common to the thoroughbred horse industry, to petition the tax court for redetermination.

To avoid the tax deficiency, Tolin needed to demonstrate that he met any one of seven available tests to qualify his conduct as "material participation" in the thoroughbred activity. *See* 26 C.F.R. § 1.469-5T(a). The first of these tests requires showing that "[t]he individual participates in the activity for more than 500 hours during" the taxable year. *Id.* § 1.469-5T(a)(1). Cumulatively, Tolin estimated that he had participated in the thoroughbred activity for 891 hours in 2002, 862 hours in 2003, and 937.5 hours in 2004. He corroborated these estimates with phone records,

witness testimony, and other materials. The case proceeded to trial, and the tax court ultimately determined that Tolin performed more than 500 hours of qualifying work during each of the years in question. The court found Tolin's activities met the "material participation" test. Consequently, he was entitled to claim deductions for the losses he had incurred through the business and avoid the deficiency claimed by the Commissioner.

Following his trial success, Tolin petitioned the court for reasonable litigation costs and attorney's fees allowable under 26 U.S.C. § 7430. He sought attorney's fees totaling $256,920, based on 642.3 hours of work between May 1, 2009, and January 31, 2011, calculated at a rate of $400 per hour. The government argued that Craigo's time expenditure and rate were not reasonable given the nature of the case and that § 7430 limits the hourly rate for attorney's fees to $180 per hour.

The tax court concluded that Tolin was a "prevailing party" entitled to recover fees incurred after December 1, 2009—the point at which the tax court determined the government's litigation position was no longer "substantially justified." *See* 26 U.S.C. § 7430(c)(4). The court divided the relevant hours for separate consideration: hours claimed during pretrial and trial portions of the proceeding (153.7), and hours claimed for post-trial work (300.1). The tax court reduced the pretrial and trial portion of the recovery to 116 hours. Tolin does not contest that portion of the ruling on appeal.

Then the tax court analyzed the claimed post-trial hours by dividing them into periods during which the post-trial opening brief and reply brief were prepared. First, Craigo recorded 196.3 hours in his timesheets from August 21 through December 8, 2010. Describing the timesheets as "skeletal," the tax court determined that Craigo spent 176.3 of those hours preparing the post-trial opening brief. *Tolin v. Comm'r*, 115 T.C.M. (CCH) 1119, 2018 WL 1391815, at *15 (2018). The remaining 20 hours were spent identifying and correcting an error in a trial exhibit. The tax court

determined that the hours spent on correcting the exhibit were reasonably expended, but it took issue with some of the remaining 176.3 hours for briefing.

The opening brief, the tax court noted, was only 36 pages long and "was devoted to demonstrating that [Tolin] had satisfied three of the regulatory tests for material participation." *Id*. at *16. The court's review of Craigo's timesheets showed an "extraordinary number of telephone conferences between" Tolin and Craigo during the briefing period, leading the tax court to "conclude that the consultation . . . caused the preparation time to become unreasonable in relation to the task at hand." *Id*. The court noted that a "hallmark" of Tolin's activity in his thoroughbred business was making numerous daily phone calls to business associates, and it surmised that his "penchant for incessant telephoning and micromanagement carried over into his participation in the briefing of the deficiency case." *Id*. Consequently, the tax court treated only one-half of the 176.3 opening brief hours as having been reasonably expended. The tax court similarly reduced by half the 103.8 hours that Craigo submitted for work on the reply brief, citing the same reasons.

Lastly, the tax court limited Tolin's recoverable attorney's fees rate to the statutory maximum. The tax court acknowledged that an enhanced rate is available under § 7430(c)(1)(B)(iii) when justified by the presence of some "special factor." But it concluded that nothing more than generalized tax and litigation experience was needed to prove the extent of Tolin's participation in the thoroughbred activity. The tax court awarded fees for 160.1 hours of post-trial work at the statutory rate. Tolin filed a motion for reconsideration, which the tax court denied.

## II. *Discussion*

On appeal, Tolin argues that the tax court erred by declining to find the presence of a special factor warranting an enhanced fee rate and by reducing the number of hours worked during the post-trial process. We review the tax court's

determination of attorney's fees under § 7430 for an abuse of discretion. *United States v. Bisbee*, 245 F.3d 1001, 1007 (8th Cir. 2001).

A. *Presence of "Special Factor"*

A "prevailing party" in a deficiency case is entitled to recover reasonable attorney's fees. 26 U.S.C. § 7430. Section 7430(c)(1)(B)(iii) provides a statutory cap on attorney's fees "unless the court determines that a special factor, such as the limited availability of qualified attorneys for such proceeding, the difficulty of the issues presented in the case, or the local availability of tax expertise, justifies a higher rate." General knowledge and litigation abilities are not enough to justify the enhancement; the "qualified attorney" must possess "some distinctive knowledge or specialized skill needful for the litigation in question." *Pierce v. Underwood*, 487 U.S. 552, 572 (1988) (discussing the special factor determination in context of the Equal Access to Justice Act (EAJA), which contains a nearly identical fee limiting provision).

Tolin asserts that Craigo possessed three special factors that the tax court ignored. The first was Craigo's special expertise in the equine industry. The second was Craigo's 100 percent success rate on the one disputed trial issue. The third was an "aggregation" of his equine expertise and trial success factors with his general legal experience and his substantial experience with tax law. Tolin admits he has not found case law to support his aggregation theory, but he submits that it is a plausible result that has not yet been authoritatively disallowed.

First, Tolin cites an out-of-circuit case for the proposition that his equine knowledge should qualify as a special factor. *See Bode v. United States*, 919 F.2d 1044 (5th Cir. 1990). In *Bode*, the court acknowledged that the merits of that case had possibly required an attorney's special knowledge about quarterhorses, and it stated that such expertise "may well have qualified as a special factor," without reaching the issue of whether it qualified in that case. *Id*. at 1051. Here, the tax court

acknowledged *Bode*'s dicta, but it concluded that Craigo's specialized knowledge of the horse industry was not "needful for the litigation in question." *See Underwood*, 487 U.S. at 572. To prevail in his case, Tolin only had to describe the nature and extent of his participation in his thoroughbred business. The tax court did not have "to make any determinations regarding breeding rights, stud or sale contracts, distribution of race winnings, or any other equine-related issues," so Craigo's specialized knowledge did not significantly contribute to the litigation. *Tolin*, 2018 WL 1391815, at *16.

Tolin argues that knowledge of industry practices and standards is integral to applying the complex rules that comprise this area of the tax law. But an attorney without Craigo's equine expertise could still explain the nature of Tolin's work and why it qualified under any one of the seven "material participation" tests[2] outlined in the regulations. The tax court did not abuse its discretion in determining that Craigo's specialized knowledge did not warrant an upward departure from the statutory fee rate.

Tolin also cites *Bode* to support finding the existence of a special factor based on his "exceptional results" at trial. 919 F.2d at 1051–52 ("To the extent that exceptional results can be a special factor . . . the district court could find . . . that the results obtained in this case meet that definition."). But according to the Code of Federal Regulations, "[t]he undesirability of the case, the work and the ability of counsel, *the results obtained*, and customary fees and awards in other cases . . . do not constitute special factors" that would warrant more than the statutory rate. 26 C.F.R.

---

[2]Though the tax court only analyzed Tolin's participation under the first test, Tolin argued below that he met the requirements of at least three: participation in the activity for more than 500 hours during the year in question; participation for more than 100 hours during the year while his participation was not less than that of any other individual for that year; and participation "on a regular, continuous, and substantial basis during [the] year." *See* 26 C.F.R. § 1.469–5T(a)(7).

§ 301.7430-4(b)(3)(iii)(B) (emphasis added). We agree with the tax court that this was not a particularly complex or specialized tax case. Only one issue went to trial. The case turned on the volume and detail of Tolin's phone call records and his business trips to Louisiana. These facts alone largely convinced the tax court that Tolin materially participated in the business. On this record, we conclude Tolin has not established the presence of a special factor as contemplated by § 7430.

Tolin's final argument attempts to aggregate these unpersuasive factors with Craigo's legal experience and tax expertise. We find it unavailing. Though the business context may have been novel, this was, nonetheless, a standard tax case evaluating business participation. The tax court did not abuse its discretion by determining that a higher rate was unwarranted.

### B. *Reduction of Reasonable Hours*

"The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the [trial] court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The court should likewise exclude any "hours that were not reasonably expended," such as those "that are excessive, redundant, or otherwise unnecessary." *Id*. at 434 (internal quotation omitted).

In its reasonable hours analysis, the tax court first discussed deficiencies in Craigo's submitted timekeeping records:

The entries do not . . . break down the time expended on a given task. Consequently, we are unable to determine the number of hours that petitioner's counsel expended for various tasks. *See Huffman v. Commissioner*, T.C. Memo. 1994–73, 1994 WL 52368, at \*1. This has made the Court's task of determining the reasonableness of the fees difficult in some instances. Since "[t]he fee applicant has the burden of producing satisfactory evidence as to the number of hours reasonably spent on the case," *id.*, any estimates we have made that work to petitioner's detriment are properly attributed to a failure of proof.

*Tolin*, 2018 WL 1391815, at \*12. Because the entries do not break down the time, the parties debate how many of the submitted hours were actually spent on the numerous phone calls between Tolin and Craigo. But, regardless of the number of hours actually at issue, the tax court discussed the volume of calls and characterized them as "a key cause of the excessive hours expended" on the briefing. *Id*. at \*16.

Tolin contends that the tax court's sole rationale for reducing the hours was the number of phone calls. We disagree. In fact, the tax court found that 176.3 hours was "excessive" in light of the short length and relatively non-complex content of the opening brief. *Id*. "For the same reasons," it found that 103.8 hours was an unreasonable number of hours to spend preparing the reply brief. *Id*.

When determining the number of hours reasonably expended, "[t]rial judges should weigh the hours claimed against their own knowledge, experience, and expertise of the time required to complete similar activities." *Paris Sch. Dist. v. Harter*, 894 F.3d 885, 889 (8th Cir. 2018) (cleaned up). A trial court "is in a much better position to make this appraisal than is an appellate court." *Id*. (internal quotation omitted). Here, the tax court has a "superior understanding" of the relevant litigation and the underlying facts affecting the reasonableness of a fee award. *See Hensley*, 461 U.S. at 437.

That said, this court has similarly reduced a § 7430 fee award for excessive hours submitted. In *Miller v. Alamo*, taxpayers' attorneys submitted a total 274 hours spent on preparing an appeal. 983 F.2d 856, 861 (8th Cir. 1993). Because the issues had been researched beforehand to prepare for the underlying trial, we reduced an "excessive" 118 hours—spent on researching, drafting, preparing, and reviewing the appellate brief—to 60 hours. *Id*. We also reduced the "unusually high number of hours" spent on, *inter alia*, attorney conferences and telephone calls, from 95 hours to 60 hours. *Id*.

In this case, Craigo's submitted hours amounted to nearly four and a half weeks of full-time work on the post-trial opening brief, and over two and a half weeks of work on the reply brief. The tax court determined that these hours were unreasonably expended in relation to the task at hand, instead granting 88.2 hours and 51.9 hours for each, respectively. We have no reason to second-guess the tax court's assessment, especially in light of our own calculations in *Alamo*.

Further, the government's initial notice of deficiency sought about $60,000 in additional taxes and penalties from Tolin. Tolin's requested attorney's fees, just for the 280.1 hours submitted for post-trial briefing, would have exceeded $50,000, even at the lower statutory rate of $180 per hour. "'[B]illing judgment' is an important component in fee setting. . . . Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (internal quotation omitted). The tax court did not abuse its discretion by determining that the requested fee award was unreasonable.

## III. *Conclusion*

We affirm the grant of attorney's fees as determined by the tax court.

———————————————