**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DIANE W. WOLF,
Petitioner-Appellant,

v.

No. 95-1268

COMMISSIONER OF THE INTERNAL
REVENUE SERVICE,
Respondent-Appellee.

Appeal from the United States Tax Court.
(Tax Ct. No. 90-5779)

Argued: December 8, 1995

Decided: January 9, 1996

Before MURNAGHAN, WILLIAMS, and MICHAEL,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Sandon Lee Cohen, DAVID RODMAN COHAN &
ASSOCIATES, P.C., Baltimore, Maryland, for Appellant. Alice Liz-
beth Ronk, Tax Division, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Loretta C.
Argrett, Assistant Attorney General, Gary R. Allen, Jonathan S.
Cohen, Tax Division, UNITED STATES DEPARTMENT OF JUS-
TICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Petitioner challenges the United States Tax Court's finding that she and the Internal Revenue Service never fully agreed on the terms of a proposed settlement agreement, that she had not engaged in yacht-chartering activity for the primary purpose of making a profit, and that she was entitled to only a small portion of the award she sought for costs and attorneys' fees. We reject Petitioner's challenge and affirm the decision below.

I.

On January 17, 1990, the Internal Revenue Service (IRS) notified Petitioner Diane W. Wolf[1] that it had found her liable for an income tax deficiency of $8,195 for tax year 1979. The deficiency was asserted after Petitioner claimed net operating losses for tax year 1982 and carried those losses back to 1979. Proceeding pro se, Petitioner filed with the Tax Court for a redetermination of her liability.

At a hearing before the Tax Court on October 2, 1990, Deborah Clark, counsel for the IRS, stated that "[t]he parties ha[d] reached a basis for settlement in this case," and that the parties were "prepared . . . to state the basis of settlement on the record." With the court's permission, she did so:

> The Respondent concedes that the Petitioner is entitled to an ordinary loss in the amount of $50,000 in the taxable year 1982 which affects the net operating loss claimed in 1982 and carried back to 1979. The Respondent also concedes that the Petitioner is entitled to deduct Schedule C loss from

_____

[1] After this litigation had begun, Petitioner remarried and assumed a different last name.

2

a yacht-chartering activity in the amount of $12,543. The Petitioner concedes all other adjustments.

When asked by the court whether she was satisfied with that recitation of the basis of settlement, Petitioner replied:

> I don't know if I'm permitted to say this but I'm going to ask you--the largest concession from the government to me for the settlement was $30,000 for yacht loss in`81. Yesterday they discovered that it wasn't in front of them and they didn't have the right to grant that to me. However, as part of this they have agreed to recommend to District Counsel that they allow me the loss that they were going to give me. I realize that doesn't bind District Counsel.

The court stated that it had no jurisdiction over matters concerning the 1981 tax year, then asked Petitioner whether she was"satisfied as to the matters before the court." Petitioner said that she was. The court gave the parties thirty days to prepare the necessary decision documents. Soon thereafter, however, the IRS reported that the parties had proved unable fully to resolve their differences.

On April 8, 1991, the IRS moved to increase Petitioner's deficiency for 1979 from $8,195 to $79,606. Over Petitioner's objection, the motion was granted. After her motion for reconsideration was denied, Petitioner retained an attorney.

Petitioner moved for summary judgment on November 14, 1991, arguing that remarks made during the October 2 hearing demonstrated that a settlement had been reached and that only computational issues remained to be resolved. The IRS abandoned its position that Petitioner owed a deficiency of $79,606 and reverted to its prior contention that Petitioner owed approximately $8,000, yet argued that no enforceable settlement agreement had ever been reached. Petitioner conceded that the parties had signed neither a stipulation of settled issues nor decision documents. The court denied Petitioner's motion for summary judgment, finding that, "[b]y their statements and actions the parties and their counsel have demonstrated that this case is not settled."

3

At the ensuing trial, Petitioner testified that she and her then-husband, Morris Wolf, had attempted to charter a boat in France in 1980, and discovered that it was difficult to secure a vessel without at least one year's advance notice. She stated that she and Mr. Wolf then explored the possibility of entering the chartering business by talking with various lawyers, brokers, and individuals already working in the field. Petitioner testified that she and Mr. Wolf acquired a yacht in 1981, hired a captain, displayed the boat to boat brokers, notified a travel agency of the boat's availability, and began to accept chartering appointments beginning in July or August of 1981. They took in approximately $7,000 in revenue in that year, but sustained substantial losses. Petitioner testified that, near the end of 1981, she and Mr. Wolf learned that the French government intended to levy unanticipated taxes; that fact, together with the demise of Petitioner and Mr. Wolf's relationship, caused them to put the boat up for sale.

The Tax Court held that Petitioner had "failed to carry her burden of proving that profit was the objective of the boat chartering activity." The court observed that, prior to buying the boat, the couple had wanted to sail the Mediterranean but had been unable to do so, and that the couple had put the boat up for sale soon after their relationship began to deteriorate. The court found Petitioner's testimony "not convincing" and concluded that

> even though petitioner and Morris Wolf might have been quite willing to make a profit, their actual objective in acquiring the [boat] was not profit. Instead, their purpose was personal pleasure. Their motive for considering leasing was to defray a portion of the cost of the yacht they wished to own for their joint personal enjoyment.

Petitioner then filed a motion for costs and attorneys' fees totaling $35,472.95, claiming that the IRS had taken a substantially unjustified position when it increased her deficiency from $8,195 to $79,606, and that it was the IRS's taking of such a position that caused Petitioner to hire counsel. The IRS conceded that it had taken a substantially unjustified position, but argued that recoverable costs "should be limited to those costs allocable to the period of time during which [the agency] maintained a position not substantially justified." Agreeing

4

with the IRS, the court awarded Petitioner $3,194: $2,782 for attorneys' fees and $412 for out-of-pocket expenditures.

Petitioner contends that the district court erred when it held (1) that a settlement had not been reached in late 1990; (2) that she did not purchase, maintain, and operate the vessel with the primary purpose of making a profit; and (3) that she was not entitled to a substantial award for costs and attorneys' fees.

The federal courts of appeals generally have exclusive jurisdiction to review decisions of the Tax Court. 26 U.S.C.§ 7482(a) (Supp. 1995). We review the Tax Court's factual findings only for clear error, "unless `there has been an erroneous interpretation of the applicable legal standard.'" Antonides v. Commissioner, 893 F.2d 656, 659 (4th Cir. 1990) (quoting Faulconer v. Commissioner, 748 F.2d 890, 895 (4th Cir. 1984)). "A finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). We review the Tax Court's decision with respect to costs and attorneys' fees for an abuse of discretion. Bowles v. United States, 947 F.2d 91, 94 (4th Cir. 1991).

II.

Petitioner contends that the Tax Court erred when it refused to enforce the settlement agreement she believes was reached in the fall of 1990.**2** We disagree. It is true that the parties stated at the October 2 hearing that "a basis for settlement" had been agreed upon. It is also true that counsel for the IRS proceeded to describe key terms of that settlement. Yet while Petitioner did indicate that she was satisfied

_____

**2** Petitioner also argues that the Tax Court erred as a matter of law by holding that a writing was required in order to reach a finding that a settlement had been reached. The court below did not so hold. The court stated that "[b]y their statements and actions the parties and their counsel have demonstrated that this case is not settled," and that there was "no stipulation of facts nor any written or oral statement of agreement as to the facts of the case." While the court did regard the absence of a writing as significant, it did not regard that absence as conclusive.

with the recitation of the terms of settlement with respect to tax years 1979 and 1982, it is reasonably apparent that matters concerning tax year 1981 were crucial to Petitioner's consent to the settlement agreement, but not yet fully resolved to her satisfaction at the time of the October 2 hearing. We also note that the proposed basis of settlement described to the Tax Court may not have been sufficiently specific to enable a court--on the basis of that recitation alone--to determine the amount of tax owed by Petitioner. In light of such considerations, we find that the court did not clearly err when it held that no enforceable settlement agreement had been reached.

III.

Petitioner contends that the Tax Court erred when it found that she had purchased and operated the yacht primarily for purposes of pleasure, rather than profit.

The Tax Code provides that, if an activity is "not engaged in for profit," then the taxpayer is not entitled to any deduction "attributable to such activity . . . except as provided in this section."[3] 26 U.S.C. § 183(a) (Supp. 1995). An activity is "not engaged in for profit" if it is an activity "other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." Id. § 183(c). Section 162 allows a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. § 162(a) (Supp. 1995). Paragraphs (1) and (2) of § 212 allow individuals to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year (1) for the production or collection of income; [or] (2) for the management, conservation, or maintenance of property held for the production of income." 26 U.S.C. § 212. To

_____

[3] Section 183(b)(1) allows those deductions "which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit." Section 183(b)(2) allows a deduction equal in amount to those deductions that would be allowable if the activity were engaged in for profit, "but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1)." Neither provision is at issue in the instant case.

qualify for a deduction under either § 162 or§ 212, a taxpayer must carry her burden of showing that she engaged in the given activity primarily for the purpose of making a profit. Hendricks v. Commissioner, 32 F.3d 94, 97 & n.6 (4th Cir. 1994); see also Faulconer v. Commissioner, 748 F.2d 890, 893 (4th Cir. 1984) (stating that the taxpayer ordinarily possesses the burden of persuasion).

The Treasury Department's regulations elaborate on the "engaged in for profit" requirement of § 183:

> The determination whether an activity is engaged in for profit is to be made by reference to objective standards, taking into account all of the facts and circumstances of each case. Although a reasonable expectation of profit is not required, the facts and circumstances must indicate that the taxpayer entered into the activity, or continued the activity, with the objective of making a profit. . . . In determining whether an activity is engaged in for profit, greater weight is given to objective facts than to the taxpayer's mere statement of his intent.

26 C.F.R. § 1.183-2(a). The regulations provide a non-exclusive list of nine factors that "should normally be taken into account" when making that determination: (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort spent by the taxpayer on the activity; (4) the expectation that assets used in the activity might appreciate in value; (5) the taxpayer's success in carrying on similar or dissimilar activities; (6) the taxpayer's record of income or losses attributable to the activity; (7) the amount of profits earned; (8) the taxpayer's financial status; and (9) the personal pleasure or recreation derived from the activity by the taxpayer. 26 C.F.R. § 1.183-2(b).

Petitioner argues that the Tax Court in the instant case erred both by considering only the ninth factor described in the regulations and by concluding that Petitioner had not engaged in the chartering activity with the primary purpose of making a profit.

Our review of the lower court's opinion leads us to conclude that the court gave due consideration to the factors outlined in the regula-

7

tions. The court stated that neither Petitioner nor her former husband had expertise in the chartering business; this is directly relevant to the second factor, and might also be relevant to the fifth. The court observed that Petitioner and Mr. Wolf had suffered "a substantial net loss"; this is directly relevant to the sixth and seventh factors. The court stated that, after placing the boat in service in the late summer of 1981, the parties put the boat up for sale at the end of that year; this is relevant to the third factor. The court recounted the manner in which Petitioner and Mr. Wolf attempted to solicit business; this is relevant to the first and third factors. And, with respect to the ninth factor, the court found that Petitioner had derived significant pleasure from the yachting activity. In short, it is clear that the Tax Court considered all of the relevant facts and circumstances before concluding that Petitioner had not engaged in the chartering activity with the requisite intent of making a profit.

Moreover, having reviewed the record, we are not "left with the definite and firm conviction" that the Tax Court erred in reaching its conclusion. See United States Gypsum Co., 333 U.S. at 395; see also Thomas v. Commissioner, 792 F.2d 1256, 1260 (4th Cir. 1986) ("`[W]here there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous.'") (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985)). We therefore refuse to disturb the ruling below.

IV.

When a taxpayer is the "prevailing party" in a court proceeding brought by or against the United States concerning "the determination, collection, or refund of any tax," she may be awarded a judgment for "reasonable litigation costs incurred in connection with such court proceeding." 26 U.S.C. § 7430(a). "Reasonable litigation costs" include reasonable court costs, reasonable expenses of expert witnesses, reasonable costs of studies, analyses, tests, or reports necessary for the preparation of the taxpayer's case, and reasonable attorneys' fees. Id. § 7430(c)(1). Recoverable attorneys' fees cannot exceed $75 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such a proceeding, justifies a higher rate." Id. § 7430(c)(1)(B)(iii). A taxpayer is the "prevailing party" within

8

the meaning of § 7430(a) if, <u>inter alia</u>, she "establishes that the position of the United States in the proceeding was not substantially justified" and she shows that she either "substantially prevailed with respect to the amount in controversy" or "substantially prevailed with respect to the most significant issue or set of issues presented." <u>Id</u>. § 7430(c)(4)(A).

The Tax Court divided the issues in the instant case into two categories: the substantive issues (including all matters affecting the amount of the 1982 net operating loss) and the computational issues (including all matters affecting the computation of the tax owed for 1979). The court found that Petitioner had prevailed only with respect to the computational issues, then observed that the IRS had conceded that it had taken a substantially unjustified position when it increased the amount of the deficiency owed from $8,195 to $79,606. The court therefore held that Petitioner was entitled to reimbursement for reasonable costs and fees that were attributable to resolution of the computational issues and that were "incurred from April 8, 1991, the date on which [the IRS] asserted the increased deficiency, through April 13, 1992, the date on which [the IRS] conceded the computational issues."

Because Petitioner and her attorneys had entered an agreement under which she was to pay a maximum fee of $10,000 for their handling of the case, and because the attorneys had logged a total of 472.5 hours, the court calculated the attorneys' hourly rate as $21.16, then multiplied that amount by the number of hours worked during the April 1991-April 1992 time period (35.4). Because it was not clear how many of those hours had been spent addressing the computational issues, the court awarded Petitioner 67 percent of the total: $502. The court further noted that Petitioner had agreed to pay her attorneys $2,500 for their handling of the motion for costs. Because 30.4 hours had been spent on that motion, for an hourly average of $82.24, and because Petitioner had not shown that a special factor required the court to exceed the statutory maximum of $75 per hour, the court multiplied $75 by 30.4 hours and awarded Petitioner $2,280. The court awarded Petitioner various other costs as well, but denied her reimbursement in the amount of approximately $12,000 for on-line research that she personally performed, because Petitioner failed to show that the research was related to the computational issues and

9

because the research may have duplicated research performed by her attorneys.

Petitioner claims that the Tax Court abused its discretion when it computed the amount of recoverable costs and fees because it (1) limited those costs and fees to those incurred in combatting the IRS's substantially unjustified position; (2) failed to"take into account" the IRS's refusal to abide by the settlement agreement purportedly reached in the fall of 1990; (3) improperly calculated the amount of attorneys' fees for which Petitioner was entitled to reimbursement by dividing the total fee paid by the total number of hours worked; and (4) denied Petitioner reimbursement for the on-line research she performed.

Petitioner's arguments are without merit. First, we do not believe that the Tax Court abused its discretion when it separately reviewed the positions taken by the agency on each issue and awarded Petitioner only those fees paid and costs incurred in challenging the substantially unjustified positions. An identical, issue-by-issue approach has been taken by courts in this and other circuits. See, e.g., Heasley v. Commissioner, 967 F.2d 116, 119-24 (5th Cir. 1992); McConaughy v. United States, 833 F. Supp. 534, 538-39 (D. Md. 1993). Because we are sustaining the Tax Court's finding that the parties never fully settled their differences, we must also reject Petitioner's second argument. With respect to Petitioner's final contentions--that the Tax Court abused its discretion when it determined the amount of attorneys' fees for which she was entitled to reimbursement[4] and when it refused to reimburse her for on-line research that she had performed --we similarly find no abuse of discretion.

_____

[4] Petitioner maintains that she had agreed to pay her attorneys a maximum fee of $10,000 and an hourly rate of approximately $130 up until that ceiling had been reached, and that by April 1992 her attorneys had charged her $4,579 for 35.4 hours. Because that amount exceeds the statutory maximum of $75, and because Petitioner believes the case was resolved (by way of the purported 1990 settlement) before the $10,000 ceiling was reached, Petitioner contends that the Tax Court should have multiplied $75 by 35.4 hours. Whatever merits it might otherwise possess, Petitioner's argument is substantially weakened by our finding that the Tax Court did not err when it held that a settlement agreement was not reached in the fall of 1990.

10

We have reviewed all of Petitioner's other arguments, and find them unpersuasive as well.

The decision of the Tax Court is accordingly

<u>AFFIRMED</u>.

11