**JJR, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. C95–1744L.

United States District Court,
W.D. Washington.

Feb. 11, 1999.

---

Darrell D. Hallett, Larry N. Johnson, Chicoine & Hallett, PS, Seattle, WA, for plaintiff.

Diane E. Tebelius, U.S. Attorney's Office, Seattle, WA, Sanford Stark, U.S. Dept. of Justice, Tax Division, Washington, DC, for defendant.

### ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

LASNIK, District Judge.

Plaintiff JJR, Inc. ("JJR") seeks as award of attorneys' fees and costs incurred by JJR in litigating the above-captioned matter be-

fore this Court and before the Ninth Circuit Court of Appeals.[1] 26 U.S.C. § 7430 (1988) governs plaintiff's request[2] and authorizes an award for reasonable administrative and litigation costs to the prevailing party. 26 U.S.C. § 7430(a).

### I. "SUBSTANTIALLY JUSTIFIED"

A taxpayer is entitled to litigating costs, including attorneys' fees, if:

(a) the taxpayer has exhausted its administrative remedies (26 U.S.C. § 7430(b)(1));

(b) the taxpayer has not unreasonably protracted the proceedings (26 U.S.C. § 7430(b)(4));

(c) the taxpayer establishes that the position of the United States in the proceeding was not substantially justified (26 U.S.C. § 7430(c)(4(A)(i)));

(d) the taxpayer has substantially prevailed with respect to the amount in controversy or the most significant issues‧ presented (26 U.S.C. § 7430(c)(4)(A)(ii)); and

(e) the taxpayer meets certain net worth requirements (26 U.S.C. § 7430(c)(4)(A)(iii)).

The United States does not dispute, for purposes of JJR's fee application, that JJR has exhausted its administrative remedies, did not unreasonably protract any portion of the proceedings, has substantially prevailed in the proceedings, and satisfies the applicable net worth requirements. *See* United States' Opposition to Plaintiff's Motion for Attorneys' Fees and Costs at 8 (12/18/98). The United States maintains that JJR is not entitled to litigation costs, however, because the United States' position was substantially justified.

The Supreme Court has defined "substantially justified" as follows:

> We are of the view, therefore, that as between the two commonly used connotations of the word "substantially," the one most naturally conveyed by the phrase before us here is not "justified to a high

---

**1.** Having reviewed the parties' many briefs on this subject, the Court denies plaintiff's request for oral argument.

**2.** Although 26 U.S.C. § 7430 has been amended twice since 1988, the amendments did not be-

come effective until after this litigation was commenced and, therefore, are not applicable here. All citations to the U.S.C. refer to the 1988 version.

degree," but rather "justified in substance or in the main"—that is, justified to a degree that could satisfy a reasonable person. That is no different from the "reasonable basis both in law and fact" formulation · adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue.... To be "substantially justified" means, of course, more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard for ‚Government litigation of which a reasonable person would approve.... "[A] position can be justified even though it is not correct, and we believe it can be substantially (*i.e.,* for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact."

*Pierce v. Underwood,* 487 U.S. 552, 565–66 and n. 2, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citations omitted).

■ The United States' position in these proceedings was not substantially justified. As to that portion of the government's claim related to cash or credit card transactions between customers and performers,[3] the Court found, as a matter of law, that there were no payments that could have given rise to employment taxes for the period in question. *See* Order Granting Plaintiff's Summary Judgment Motion for § 530 Relief at 11 (1/3/97). Such a conclusion was compelled by the similarities between JJR's operations and

the facts of the "caddy case," Revenue Ruling 69–26, 1969–1 C.B. 251, and the dissimilarities between JJR's operations and the operations of other adult entertainment facilities that had been held liable for employment taxes. Even if there were a reasonable basis in the case law to believe that certain nightclub operators could be responsible for their dancers' employment taxes, there was no reasonable basis in fact to believe that *this* nightclub operator, operating as it did, could be liable for the payments from customers to the dancers, either directly or through the use of credit cards.[4] Thus, the United States' litigating position with regards to the majority of the taxes sought did not have a reasonable basis in the facts of this case and was not substantially justified.

■ In addition, for the reasons set forth in the Declaration of Larry N. Johnson at ¶¶ 3–27 (9/25/98), the United States' litigating position regarding approximately 80% of its claim was not substantially justified. The United States made almost no effort to support its underlying allegations of lack of reasonable basis, intentional disregard and/or wilful negligence, virtually conceding that its position regarding the increased assessments was not justified.

■ Finally, the United States was not substantially justified in pursuing its claims against JJR despite the safe-harbor provided by Section 530 of the Revenue Act of 1978.[5]

---

3. Such exchanges make up the vast majority of defendant's claim.

4. At oral argument before the Ninth Circuit, the United States conceded that there were no payments from the nightclub operator when a customer paid a dancer in cash. *See Marlar, Inc. v. United States,* 151 F.3d 962, 968 (9th Cir.1998). With regards to a large portion of its claim, therefore, the government acknowledged that its position was incorrect. In its ruling, the appellate court relied on common sense in holding that the other transactions that were part of the government's claims (*i.e.,* credit card transactions and ladies' drinks sales) were also not payments from the nightclub operator to the dancer. *See Marlar,* 151 F.3d at 969 (finding that it is "eminently logical" to conclude that a disburser or conduit of funds in a transaction does not make a payment on its own behalf).

5. Section 530 provides:
   (a) **Termination of certain employment tax liability.—**

(1) **In general.—**If—
   (A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and
   (B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayers's treatment of such individual as not being an employee, then for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.
   (2) **Statutory standards providing one method of satisfying the requirements of paragraph (1).—**For purposes of paragraph (1), a taxpayer shall in any case be treated as having a reasonable basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual for such period

JJR showed, without contradiction by the United States, that, for purposes of employment taxes, JJR had not treated the dancers as employees and had filed all required tax forms consistent with its treatment of the dancers as lessees. JJR further showed that there was a long-standing industry practice in the Seattle–Tacoma area to treat dancers as lessees, and that reliance on such a practice was reasonable because (1) the local industry had operated under lessor/lessee agreements for a number of years without IRS challenge, (2) certified public accountant Ernst Johnson had advised the industry in the late 1980's that the dancers could properly be characterized as lessees for whom no 1099 forms need be filed, (3) the IRS had audited a similar operation owned by JJR's sole shareholder and required no changes in the treatment of the dancers, and (4) there was no contrary judicial or administrative precedent that was not readily distinguishable.

Rather than challenge the existence of an industry practice or the reasonableness of JJR's reliance, the United States maintained that JJR failed to file the appropriate tax forms, such that JJR's claim for § 530 protections must fail.[6] To make such an argument, the United States ignores JJR's consistent treatment of its dancers as lessees to whom *no* payments were made. Whether mistaken or not, JJR's treatment of its dancers as lessees, its reasonable reliance on a similar industry practice, and its filing of Federal tax forms that are consistent with that practice (in this case, none), qualifies JJR for the safe-harbor protections of § 530. Even if the Court were ultimately to determine that JJR's practice of splitting the proceeds from the sale of a ladies' drink with the performers was a form of payment that could give rise to an employment tax liability,[7] the United States has not offered evidence that

any single performer received $600 or more through the sale of such drinks. *See* Order Granting Plaintiff's Summary Judgment Motion for § 530 Relief at 20 (1/3/97). Thus, the United States offered no basis on which to find that JJR was not entitled to § 530 protections. Its litigating position on that issue, which was dispositive of the entire case, was not substantially justified.

## II. "REASONABLE LITIGATION COSTS"

The cost recovery statute provides for the recovery of "reasonable litigation costs," including:

> reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding, except that such fees shall not be in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate.

26 U.S.C. § 7430(c)(1)(B)(iii). JJR has requested payment of all of its litigating expenses, including attorneys' fees at rates between $175 and $250 per hour, billable staff time at rates between $50 and $100 per hour, and costs. JJR requests a total of $253,-397.64. The United States maintains that there are no "special factors" that would justify an award above the statutory $75 per hour rate, and that the number of hours spent on this matter by JJR's attorneys was unreasonable.

In *Pierce v. Underwood,* 487 U.S. at 572, 108 S.Ct. 2541, the Supreme Court found that "the 'special factor' formulation suggests Congress thought that $75 an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be." If an attribute of counsel or the type of legal analysis required was

---

was in reasonable reliance on any of the following:

   (A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;

   (B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or

   (C) long-standing recognized practice of a significant segment of the industry in which such individual is engaged.

**6.** Pursuant to 26 U.S.C. § 6041(a), JJR would have had to report the payment of $600 or more in any taxable year to any individual dancer.

**7.** The Court has already determined that the dancers' other sources of income were not "payments" from JJR and were not subject to employment taxes.

probably considered by the market when determining an appropriate hourly rate, then that factor is not "special," but rather routine. *Pierce*, 487 U.S. at 571–74, 108 S.Ct. 2541.

■ Although there is no question as to counsels' competence and expertise in this area of tax law, the Court concludes that there are no special factors that would justify an upward departure from the $75 per hour statutory fee. The Court also finds that the hours spent on this matter, in both the district court and the court of appeals, were reasonable, despite the fact that the *Marlar* attorneys were able to obtain substantially the same results in less than one quarter of the time. The United States has not identified any activities that need not have been conducted by JJR's counsel, has not shown that the government's demands, litigating posture, and discovery activities were substantially similar in *Marlar* and this case, and has not shown that counsel unnecessarily prolonged this litigation or otherwise unreasonably increased the number of hours spent on this matter. The mere fact that two firms devote different resources and time to similar matters does not necessarily mean that one of them acted unreasonably.

Both parties agree that, if an award of costs is granted, JJR is entitled to a cost-of-living-adjustment. The Court therefore awards the following:

District Court Proceedings

| | | |
|---|---|---|
| 1995 Attorneys Fees | 126.50 hours @ $104.29 per hour = | $13,192.69[8] |
| 1996 Attorneys Fees | 599.20 hours @ $107.37 per hour = | $64,336.10 |
| 1997 Attorneys Fees | 46.00 hours @ $109.53 per hour = | $ 5,038.38[9] |
| Paraprofessional costs | | $ 3,846.25 |
| Other litigation costs | | $ 6,760.00 |
| | | $93,173.42 |

Ninth Circuit Proceedings

| | | |
|---|---|---|
| 1997 Attorneys Fees | 212.00 hours @ 109.53 per hour = | $23,220.36[10] |
| 1998 Attorneys Fees | 55.75 hours @ 110.69 per hour = | $ 6,170.98[11] |
| Paraprofessional costs | | $ 8,615.00[12] |
| Costs per Bill of Costs | | $ 396.17 |
| Other litigation costs | | $ 1,563.42 |
| | | $39,965.93 |

It is hereby ORDERED that defendant the

8. JJR received notice of the decision of the Internal Revenue Service Office of Appeals on or about June 9, 1995. Recoverable fees began to accrue on that date. *See* 26 U.S.C. § 7430(c)(7).

9. The parties do not agree on the number of hours spent in the district court proceedings in 1997. *See* United States' Opposition to Plaintiff's Motion for Attorneys' Fees and Costs at 13 (12/18/98); Plaintiff's Reply to United States Opposition to Plaintiff's Motion for Attorneys' Fees and Costs at 12 (12/24/98). Because the Court has been unable to duplicate plaintiff's calculation of 47.75 hours, it has used the number to which defendant has agreed, 46.00 hours.

10. The parties do not agree on the number of hours spent in the Ninth Circuit proceedings in 1997. *See* Opposition by the United States of America to Appellee's Motion for Attorneys' Fees and Costs at 19 (10/22/98); Plaintiff's Reply to United States Opposition to Plaintiff's Motion for Attorneys' Fees and Costs at 12 (12/24/98). Because the Court has been unable to duplicate plaintiff's calculation of 164.25 hours, it has used the number to which defendant has agreed, 212.00 hours.

11. The parties do not agree on the number of hours spent in the Ninth Circuit proceedings in 1998. *See* Opposition by the United States of America to Appellee's Motion for Attorneys' Fees and Costs at 19 (10/22/98); Plaintiff's Reply to United States Opposition to Plaintiff's Motion for Attorneys' Fees and Costs at 12 (12/24/98). Because the Court has been unable to duplicate plaintiff's calculation of 106.50 hours, it has used the number to which defendant has agreed, 55.75 hours.

12. Although the United States is apparently willing to agree to paraprofessional fees of $9,677.50 (*see* United States' Opposition to Plaintiff's Motion for Attorneys' Fees and Costs at 15 (12/18/98) adopting analysis of Opposition by the United States of America to Appellee's Motion for Attorneys' Fees and Costs at 19 (10/22/98)), JJR has revised its calculations and now requests only $8,615.00 (*see* Plaintiff's Reply to United States Opposition to Plaintiff's Motion for Attorneys' Fees and Costs at 12 (12/24/98)).

United States of America shall pay plaintiff JJR, Inc. the sum of $133,139.35 pursuant to 26 U.S.C. § 7430.