**UNITED STATES of America, Plaintiff,**

v.

**L. Donald GUESS, et al., Defendants.**

**No. 04CV2184–LAB(AJB).**

United States District Court, S.D. California.

Feb. 23, 2006.

Stuart D. Gibson, United States Department of Justice, Tax Division, Washington, DC, U.S. Attorney CV, U.S. Attorneys Office, Southern District of California, Civil Division, San Diego, CA, for Plaintiff.

Darrell D. Hallett, John M. Colvin, Chicoine and Hallett, C. James Frush, Gordon Thomas Honeywell Malanca Peterson and Daheim, Seattle, WA, Miriam L. Fisher, Morgan Lewis and Bockius, Bruce Zagaris, Berliner Corcoran and Rowe, Washington, DC, James N. Mastracchio, Martina Bernstein, Morgan Lewis and Bockius, S. Thomas Pollack, Irell and Manella, Los Angeles, CA, Frank T. Vecchione, Law Office of Frank T. Vecchione, Michael L. Lipman, Coughlan Semmer and Lipman, San Diego, CA, for Defendants.

## FEE AWARD CALCULATION ORDER

BURNS, District Judge.

This matter is before the court following supplemental briefing to substantiate defendant xélan Foundation, Inc.'s ("Foundation") claim for attorneys' fees and costs incurred to defend this litigation, from the time plaintiff the United States obtained its unnoticed TRO on November 3, 2004 through the hearing of plaintiff's unsuccessful motion for preliminary injunction on December 3, 2004 and for expenses incurred to prepare its fees and costs application. The Court took the matter under submission for decision on the papers and without oral argument, pursuant to Civil Local Rule 7.1(d)(1). For the reasons discussed below, all claimed costs are approved as unopposed and facially reasonable. The Foundation's application for attorneys' under 26 U.S.C. § 7430 of the Internal Revenue Code ("Section 7430") is **_GRANTED IN PART_** and **_DENIED IN PART_**, as modified herein.[1]

---

1. In its Order conditionally awarding the

Foundation its reasonable attorneys' fees and

## I. BACKGROUND

By Order entered July 5, 2005, the court conditionally granted the Foundation's application to recover its reasonable attorneys' fees incurred to defend this action, claimed then to be in the actual amount of $232,176.30 or, alternatively, in the statutory amount of $101,008.05, and its costs, claimed then to be in the actual amount of $5,443.05. The court determined an award of the Foundation's undisputed claimed costs and an award of reasonable attorneys' fees was warranted under Section 7430. Dkt No. 148. The court instructed the Foundation to provide supporting documentation to substantiate the attorney tasks, time, qualifications, and billing rates. The court solicited briefing from both sides to assist in its determination whether deviation from the statutory hourly rate cap may be warranted. The Foundation has incorporated the costs of its fees substantiation and supplemental briefing, raising its request for attorneys' fees to the new billed amount of $312,049.75 (an increase of an additional $79,873.45), claiming a new total of 325 hours incurred by ten attorneys to prepare the application and substantiation. Its total litigation costs claim is $6,817.83. Dkt No. 150 16:1–2.

The government argues no deviation from the statutory hourly rate cap is warranted for any of the activities of the Foundation's attorneys and disputes the reasonableness of the claimed time to prepare the fee application. The issues presented are: (1) whether the Foundation justifies a fee recovery at a rate in excess of the statutory maximum based on the "special factor" that it required counsel with expertise in tax and complex litigation; (2) the meaning of the availability of

competent counsel as a consideration for waiver of the hourly rate cap in determining a Section 7430 fee award; (3) if the Foundation is entitled to recover fees at a rate in excess of the statutory cap for some of its attorneys, whether the Foundation is entitled to recover fees for all 21 of its attorneys at their normal billing rates, all of which are in excess of the statutory maximum; (4) if the Court determines that some of the Foundation's attorneys are entitled to compensation at a rate higher than the statutory maximum, whether the Foundation is entitled to recover at the billed rate; (5) whether all time spent on all billed activities, in particular the preparation of the application to recover fees and costs, should be reimbursed by the government at a rate above the statutory maximum; and (6) whether the claimed hours of attorney time is reasonable, "especially the 325 hours claimed for the work of ten lawyers pursuing its motion for fees and costs" (Opp.3:1–3).

## II. DISCUSSION

### A. *The Foundation's Twenty–One Attorneys*

■ The Foundation provided the declarations of nineteen professionals it contends "demonstrate that each attorney representing the Foundation in this litigation has the 'special expertise' required" for waiver of the Section 7430 cap on hourly rates, and that "such expertise was essential in order for the Foundation to be adequately represented in this case." Appl. 6:14–21 (emphasis added). All participating counsel emphasize the short time period the Foundation had to prepare a defense against entry of a preliminary injunction and the "monumental task" it

costs, the court ruled the application for recovery of litigation expenses is governed by Section 7430 as an action by the United States in connection with the determination

or collection of tax, interest, or penalty under the Internal Revenue Code, rather than by the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"). Dkt No. 148, p. 7.

faced while access to its own records was restricted. *See, e.g.,* Johnson Decl. ¶ 2. As a general principle, such a timing circumstance can justify a large number of billed hours, but does not necessarily advance the issue of reasonable hourly compensation under Section 7430. The government objects:

> According to the Foundation's affidavits, every single one of their attorneys, and one paralegal, should be compensated for every hour devoted to every task in this case—from reading e-mails, to drafting press releases, to participating in conference calls, or preparing the fee application—at a rate exceeding the statutory cap, with some attorneys allegedly entitled to rates more than quadruple that cap.

Opp. 3:19–24.

### 1. *Sheppard Mullin Richter & Hampton LLP*

Nine Sheppard Mullin attorneys billed a total of $98,273.00 in fees for 225.90 hours at claimed hourly rates ranging from $240.00 to $530.00, for the firm's role in defending the Foundation in this action, plus $1,167.79 in costs. Naughton Decl., Lodg. Ex. 1, 2:12–22. The Naughton Declaration emphasizes: the complexity of the tax and mail fraud allegations involving hundreds of transactions, the onerous time constraints; the need to use "tax planning and tax litigation counsel" to research corporate records, audit records, accounting records; the need to provide "declarations and legal background materials and drafts;" the need to engage "an excellent trial lawyer" to handle "the interviewing of the Foundation employees, the auditor, donors" and to handle "document requests to the Receiver" to procure the exhibits in support of the Foundation's opposition to entry of a preliminary injunction. Naughton Decl. ¶¶ 5, 6.

1. Ms. Naughton is described as a partner in her law firm with 25 years of experience as an attorney specialized in fraud cases, having tried one tax case to a jury and having defended numerous actions against the government's efforts to seize assets. She prepared "successive drafts of the brief" in opposition to the government's motion for a preliminary injunction and presented oral argument at the motion hearing. She billed 87.2 hours at an hourly rate of $530.00;

2. Roscoe C. Howard, Esq. is described only as a former United States Attorney for the District of Columbia. He "assisted in the outline and strategy of the brief." He billed 6.80 hours at an hourly rate of $525.00;

3. Daniel S. Seikaly, Esq. is described as a former Chief of the Criminal Division of the United States Attorney's Office for the District of Columbia. He also "assisted in the outline and strategy of the brief." He billed 4.10 hours at an hourly rate of $450.00;

4. Mark E. Nagle, Esq. is described as a former Chief of the Civil Division of the United States Attorney's Office for the District of Columbia who has handled similar Tax Division injunctive relief actions under the same statutes as in this case. He wrote the "first drafts of the brief." He billed 36 hours at an hourly rate of $450.00;

5. Andre P. Barlow, Esq. is described only as Mr. Nagle's associate. He "did the bulk of the legal research" for the brief, and billed 55.5 hours at an hourly rate of $345.00;

6. Elizabeth A. Balfour, Esq. is described only as a former law clerk to United States District Judge Huff. She performed "final edits" and "compilation" of the brief. She billed 20 hours at an hourly rate of $305.00;

7. Rebecca A. Shults, Esq. is described only as a former law clerk to United States District Judge Moskowitz who

performed "research for oral argument." She billed 8.8 hours at an hourly rate of $240.00;

8. Eileen M. Gorman's qualifications are not described. She billed 1.8 hours at an hourly rate of $240.00; and

9. Matthew Richardson, Esq. is described as "a tax attorney who specializes in advising charitable entities." He "provided assistance in preparation for oral argument." He billed 5.7 hours at an hourly rate of $465.00.

Naughton Decl. pp. 2–3.

### 2. *Law Offices Of Frank J. Johnson*

Attorney Frank J. Johnson (formerly of Sheppard Mullin) and his firm became the Foundation's co-counsel of record beginning November 10, 2004 to prepare the Foundation's opposition to entry of a preliminary injunction. Johnson Decl. ¶ 2, Lodg. Exh. 2. He recites his firm's contributions as primarily "gathering the facts and evidence (interviewing witnesses, obtaining declarations, working with the receiver, meeting with the auditor, etc.)" and participating in the December 3, 2004 oral argument. *Id.* ¶ 3. Mr. Johnson recites his particular relevant qualifications as having represented "numerous clients involved in complex civil litigation, including securities fraud class actions, consumer class actions, and tax fraud cases raising similar issues to those raised in this matter." *Id.* ¶ 9 (emphasis added).

Mr. Johnson billed 160.7 hours from November 10 through December 31, 2005 at an hourly rate of $370.00 ($59,459.00). He also billed 33.2 hours for the time of two associates at an hourly rate of $225.00, for a total firm fees bill of $66,929.00, plus litigation costs of $2,848.44 incurred for that period. Johnson Decl. ¶¶ 5, 6. For the period January 1 to August 11, 2005, in connection with the Foundation's litigation expenses application, Mr. Johnson billed an additional 37.1 hours at an hourly rate of $385.00 and an associate billed 8.1 hours

at an hourly rate of $275.00, totaling $16,472.50 in fees for that period, plus litigation costs of $508.69. *Id.* ¶¶ 7, 8.

### 3. *Connor & Winters LLP*

Attorney Henry G. Will states he has been "general tax counsel" for the Foundation since 1997, with a practice specialty in tax, tax-exempt organizations, and trusts and estates. Will Decl. ¶¶ 2–4, Lodg. Exh. 3. He and another member of his practice group had incorporated the Foundation and worked "to obtain its tax-exempt status under the Internal Revenue Code as a charitable organization." *Id.* ¶ 4. The firm was retained in this matter on November 8, 2004: to represent the foundation and coordinate communication between the Foundation's board and its counsel in three law firms; "to provide factual information concerning the Foundation and its activities;" to supply "information not obtainable from the Foundation's records due to their seizure by the Government;" to provide "tax expertise relating to the Foundation's tax-exempt status as a donor-advised fund;" to assist other counsel in preparing briefs and exhibits; and participating in the December 3, 2004 hearing. *Id.* ¶ 5 (emphasis added). For the period November 8 through December 3, 2004, three Connor & Winters attorneys (including Mr. Will) billed $32,402.50, at hourly rates ranging from $230.00 to $300.00 per hour, plus costs of $1,426.82. *Id.* ¶¶ 6–7. For the period January 3 through August 10, 2005, six Connor & Winters attorneys billed $56,381.50 in attorney time and $866.09 in costs in connection with the Foundation's application. *Id.* ¶ 9.

Conner & Winters attorney Martin R. Wing billed 3.3 hours at an hourly rate of $275.00 for the defense period November 8 through December 3, 2004, and 22.5 hours at an hourly rate of $290.00 for the period January 3 through August 10, 2005 in con-

nection with the Foundations' fees and costs application. He declares his practice concentration "include[s] tax and tax-exempt organizations." Wing Decl. ¶ 3, Lodg. 4 (emphasis added). He was consulted in this matter both because of his tax litigation experience and because of his significant experience with legal questions raised by the Government, including "the propriety of the Foundation's programs and activities, its qualified status and the extent to which private inurement and the conferring of a personal benefit had occurred." *Id.*

Conner & Winters attorney Katherine G. Coyle declares her practice area for over thirty years has been tax exempt organizations, and she has extensive experience with applicable requirements of the IRS Code and Treasury Regulations. Coyle Decl. ¶ 3, Lodg. 7. She has established and represented "innumerable support organizations" such as the donor advised fund operated by the Foundation. *Id.* ¶ 4. She attests the laws pertaining to such organizations are extremely complicated: "Few tax practitioners would have any but the most limited knowledge of and experience with the esoteric requirements of support organizations, a tax subspecialty essential to representation of the Foundation" in this litigation. *Id.* (emphasis added). She represents she was already very familiar with the Foundation's programs and operations through her prior representation of that entity, giving her "unique expertise" with "a similar legal and factual acquaintance with the Foundation on the part of Henry Will and Martin Wing of this firm" which was "essential to the Foundation's representation" in these proceedings, particularly as the Government had seized its records and accelerated the timetable for response. *Id.* ¶ 5. She billed 31.7 hours at an hourly rate of $230.00 for the period November 8 through December 3, 2004 and 11.4 hours at an hourly rate of $240.00 for the period January 3 though

August 10, 2005. The qualifications of two other Conner & Winters attorneys, Alissa A. Hurley and Anne B. Sublett, are not described. Ms. Hurley billed 13.5 hours at an hourly rate of $160.00. Ms. Sublett billed 119.5 hours at an hourly rate of $240.00. Ms. Carolyn S. Thomason billed .70 hours at an hourly rate of $115.00. All three billed their time for the post-defense period January 3 through August 10, 2005. Will Decl. ¶ 9, Lodg. 3.

### 4. *Chicoine & Hallett, P.S.*

Attorney Nicole M. Chicoine declares her firm is internationally known for its expertise in federal tax controversies and focuses its practice on federal and state tax matters, both civil and criminal, in litigation and administrative proceedings, with expertise by some members in tax-exempt organization matters. Chicoine Decl. ¶¶ 2, 3, Lodg. 8. The firm has been counsel for the Foundation in an administrative proceeding before the IRS involving the Foundation's tax-exempt status, through which it "has gained a breadth of knowledge of the underlying facts and tax issues involving the Foundation." *Id.* ¶¶ 3, 4 (emphasis added). On November 3, 2004, the day after the government obtained the TRO in this case, the firm was retained to assist other counsel in representing the Foundation, with "only 30 days" to prepare for the preliminary injunction hearing. *Id.* ¶ 4. She describes the firm's contributions as: researching complex tax and procedural issues; "assisting in the drafting of the response to the government's motion for a permanent restraining order;" interviewing witnesses and obtaining declarations; reviewing thousands of pages of potential exhibits; and preparing for the preliminary injunction hearing. *Id.*

Ms. Chicoine's declaration supplements her prior declaration in support of the

Foundation's motion to recover its litigation expenses, including a three page chart listing each attorney and his or her billing rate, the date of the activity performed, a description of the activity, time, and amount billed. Chicoine Decl. ¶¶ 6, 7, Lodg. 8. The firm billed $41,591.25 for 146.5 hours, and no costs. *Id.* ¶¶ 7, 9. One attorney billed at $350.00 per hour, two others at $300.00 per hour, and three other persons billed time at $95.00 or at $75.00 per hour. *See also* Lodg. 9, Colvin Decl. and Lodg. 10, Hallett Decl.

## B. *Calculation Methodology*

Section 7430 defines recoverable "reasonable litigation costs" [2] to include:

> ... reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding, except that such fees shall not be in excess of $125 per hour unless the court determines that an increase in the cost of living *or a special factor, such as* the limited availability of qualified attorneys for such proceeding, the difficulty of the issues presented in the case, or the local availability of tax expertise, justifies a higher rate.

Section 7430(c)(1)(B)(iii) (emphasis added).

■ The Foundation and the government agree that the "lodestar" calculation method is not applicable when attorneys' fees are sought under 26 U.S.C. § 7430.[3] While both take account of market information, a different presumption of "reasonableness" applies. The parties agree that the statutory hourly rate cap for the period at issue, as adjusted for inflation, is $150.00 per hour.[4] The parties also agree that the Court is empowered to determine whether "special factor(s)" contemplated by the statute justify an attorneys' fee award at an hourly rate higher than the statutory maximum. Absent a cognizable "special factor" warranting an upward departure, the hourly rate for the reasonable attorneys' fees component of litigation expenses which may be shifted under Section 7430 is capped at the statutory maximum.

### 1. *Tax Expertise Is Not A Section 7430 "Special Factor"*

Section 7430 provides for *limited fee shifting* [5] in any "court proceeding which is

---

2. Section 7430(b) describes the limitations on judgments awarding litigation costs: "(b) Limitations. ...(2) Only costs allocable to the United States.—An award under subsection (a) shall be made only for reasonable litigation and administrative costs which are allocable to the United States and not to any other party..."

3. The lodestar method for calculating attorneys' fees awards multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate, which generally takes account of prevailing market rates for such services. That method is the usual approach, for example, in awarding fees in civil rights litigation under such statutes as 42 U.S.C. §§ 1983, 1988. *See, e.g.,* discussion in *Sorenson v. Mink,* 239 F.3d 1140 (9th Cir. 2001) (discussing the differences in fee calculations under the EAJA and under the civil rights statutes).

4. The hourly rate under Section 7430 for 2004 is $150.00. As traced by the Founda-

tion: "As originally enacted, Section 7430 set the hourly rate at $75.00. In 1996, Congress amended Section 7430 to increase the maximum hourly rate payable under the statute to $125.00. Accordingly, cases decided before the 1996 amendment cite $75.00 as the maximum hourly rate." Foundation P & A p. 2, n. 2. Thereafter, a cost of living adjustment was to be calculated "by multiplying $125 by the percentage that the preceding calendar year (in this case 2003) CPI exceeds the CPI for the year 1995, rounded to the nearest $10. 26 U.S.C. § 7430(c)(1)." *Id.* p. 2, n. 3. Applying that formula, the hourly rate under 7430 for 2004 is $150.00. *See* calculation at Foundation P & A p. 2, n. 3.

5. The Supreme Court has observed that Congress set an hourly rate cap it deemed "generally quite enough *public reimbursement* for lawyers' fees, whatever the local or national market might be." *Pierce v. Underwood,* 487 U.S. 552, 572, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). As noted by the Third Circuit,

brought by or against the United States in connection with the determination, collection or refund of any tax, interest or penalty under this title" and contains provisions analogous to the EAJA with respect to a prevailing party's request for attorneys' fees and costs. *See Huffman v. Commissioner,* 978 F.2d 1139 (9th Cir.1992).[6]

Cases applying the attorneys' fee provisions in the Equal Access To Justice Act ("EAJA"), 28 U.S.C. § 2412 assist in the application of Section 7430 provisions.[7]

[T]he "special factor" formulation suggests Congress thought that $75 an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be .... [T]he exception for "limited availability of qualified attorneys for the proceedings involved" must refer to attorneys "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation.

*Pierce v. Underwood,* 487 U.S. 552, 571–72, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (emphasis added) (examining, among other things, "special factors" in the context of the EAJA attorneys' fee provision and finding an upward deviation from the statutory rate cap is justified only if the attorneys retained have "some distinctive knowledge," such as an identifiable practice speciality like patent law, where separate certification is needed, or knowledge of foreign law or language, or similar specialized skill needed in the case).

■ A primary distinction between the EAJA and Section 7430, however, is that Section 7430 applies only in tax cases. An attorney's tax expertise may be presumed in proceedings involving the Internal Revenue Code. Accordingly, tax expertise is not appropriately considered a "special factor" for purposes of deviating from the maximum rate cap. The Section 7430 "special factor" provision is discussed in *Huffman.* 978 F.2d at 1143 (adopting the Fifth and Second Circuits' reasoning to hold tax law expertise is not a "special

---

**6.** Helpful Ninth Circuit authority on the pertinent Section 7430 issues is scarce, but appears to follow Fifth and Second Circuit reasoning. *See, e.g., Huffman,* 978 F.2d at 1150, *relying on Cassuto v. Commissioner,* 936 F.2d 736, 743 (2d Cir.1991) and *Bode v. United States,* 919 F.2d 1044, 1050 (5th Cir.1990).

statutory caps on attorney fee awards, such as under the EAJA, were not intended to provide full reimbursement of legal expenses, but rather to provide reimbursement in reasonable part. *See Dewalt v. Sullivan,* 963 F.2d 27, 29, 30 (3rd Cir.1992). Like the EAJA, the Section 7430 cost recovery statute provides for recovery of "reasonable litigation costs, including attorneys fees", "except that such fees shall not be in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor ... justifies a higher rate." 26 U.S.C. § 7430(c)(1)(B)(iii) (emphasis added).

**7.** The fee award provisions are analogous. The EAJA provides, in pertinent part: "Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... including proceedings for judicial review of agency action, brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d). "Fees" include "reasonable attorney fees," which are defined to include "prevailing market rates for the kind and quality of the services furnished, except that ... attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." *Id.*

factor" for purposes of exceeding the statutory rate cap).

The Tax Court's holding that general tax expertise does not qualify as a "special factor" warranting an enhancement of the statutory fee award is in keeping with the language of § 7430, logic, and the case law. As the Second Circuit has explained: "Section 7430 applies only to tax cases; therefore most of the applications for attorney's fees under it would be to pay attorneys who have brought or defended tax cases. Such lawyers presumably all have a certain degree of 'tax expertise.' To suppose that Congress intended them all to be paid at a higher than $75 an hour rate would allow this 'special factor' to swallow the $75 an hour rule."

*Huffman v. Commissioner,* 978 F.2d 1139, 1150 (9th Cir.1992) (emphasis added) (finding it "unnecessary" to consider a taxpayer's contention that the alleged unavailability of tax specialists in Ventura County is a "special factor" justifying a fee award at an hourly rate above the statutory cap because a specialty in tax matters does not qualify as a Section 7430 "special factor"), *quoting Cassuto v. Commissioner,* 936 F.2d 736, 743 (2d Cir.1991); *accord Bode v. United States,* 919 F.2d 1044, 1050, 1051 (5th Cir.1990) ("Clearly, counsel's expertise in tax law, in and of itself, is not a special factor warranting a fee award in excess of [the then rate of] $75 per hour under section 7430" otherwise "the excep-

tion would wholly swallow the rule because almost all attorneys seeking compensation under section 7430 possess an expertise in tax law," but finding no abuse of discretion in an award in excess of the statutory hourly rate on a presumed finding that the needs of that particular case required special skill); *see also Estate of Cervin,* 200 F.3d 351 (5th Cir.2000) (articulating an inquiry, in consideration of *Pierce,* to determine whether a "special factor" warranted a higher hourly rate: (1) whether the attorney has a specialized skill needed for the litigation; (2) whether the number of attorneys with that skill is so limited that parties with potentially valid claims are unable to obtain counsel; and (3) whether an increased fee award would reduce the shortage).

The court finds the tax law expertise of the Foundation's various attorneys does not qualify as a "special factor" justifying recovery of their fees in excess of the statutory maximum rate. The government acknowledges "this case did require prompt action, and did involve a number of different issues." Opp. 14:19–21. However, "specialized non-legal expertise of the type courts have held constitutes a 'special factor' justifying an upward departure from the statutory rate in § 7430" must be demonstrated. Opp. 14:19–21.

Applying any of the various tests articulated by courts in assessing the "special factor" considerations needed before statutory cap can be exceeded,[8] unless the first

---

**8.** The Foundation relies on articulations of a "three-prong test" for waiver of the hourly rate cap in the EAJA context: "First, the attorney must possess distinctive knowledge and skills developed through a practice speciality. Secondly, those distinctive skills must be needed in the litigation. Lastly, those skills must not be available elsewhere at the statutory rate." *Love v. Reilly,* 924 F.2d 1492, 1496 (9th Cir.1991) (an EAJA case where the court found special expertise in pesticides warranted a fee award enhancement in environmental litigation, but remanding on the

third prong for specific findings on the issue of availability of other attorneys with environmental expertise at the statutory rate), *citing Pirus v. Bowen,* 869 F.2d 536, 541–42 (9th Cir.1989) (awarding fees in excess of the statutory cap under the EAJA in a class action where specialized knowledge of a highly complex area of Social Security law distinguished the matter from a routine disability case). To reiterate, fee applications brought under Section 7430 are different as that section applies *only to tax cases,* in which special expertise in tax law is presumed.

prong of "special expertise" is satisfied, the inquiry can end.

### 2. *An Extraordinary Level Of Lawyerly Ability Useful In All Litigation Is Not A Section 7430 "Special Factor"*

 In discussing the "specialized skill" component of the "special factor" inquiry, the *Pierce* Court eliminated from that equation "generalized lawyerly knowledge needed in all litigation." *Pierce* 487 U.S. at 572, 108 S.Ct. 2541. The difficulty of a case and the ability of counsel do not justify a fee award in excess of the statutory cap: "The 'novelty and difficulty of issues,' 'the undesirability of the case,' the 'work and ability of counsel,' and 'the results obtained,' . . . are factors applicable to a broad spectrum of litigation; they are little more than routine reasons why market rates are what they are." *National Wildlife Federation v. Federal Energy Regulatory Comm'n*, 870 F.2d 542, 547 (9th Cir.1989), *disapproved on other grounds in Commissioner of INS v. Jean*, 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990), *quoting Pierce*, 487 U.S. at 573, 108 S.Ct. 2541. It is beyond dispute that the Foundation was required to engage litigation counsel with tax law expertise and a high level of legal competence in complex litigation matters, and that a number of its billing attorneys were eminently suited to the task, but neither a tax specialty nor counsel's litigation skills is among the "special factors" adequate to support an upward departure from the Section 7430 hourly rate cap. *See JJR, Inc. v. United States*, 36 F.Supp.2d 1259, 1262–63 (W.D.Wash.1999) ("If an attribute of counsel or the type of legal analysis required was probably considered by the market when determining an appropriate hourly rate, then that factor is not 'special,' but rather routine"), *citing Pierce*, 487 U.S. at 571–74, 108 S.Ct. 2541. "The Supreme Court has rejected the ability of

counsel and the difficulty of the case as factors justifying an excess award." *National Wildlife Federation*, 870 F.2d at 547, *citing Pierce*, 487 U.S. at 572, 108 S.Ct. 2541.

### 3. *"Limited Availability" At The Statutory Hourly Rate Is Not A Section 7430 "Special Factor"*

 The measure of reasonable attorneys' fees awarded under Section 7430 is "based upon prevailing market rates for the kind or quality of services furnished" *but* "shall not be in excess of $75.00 [now $150] per hour unless the court determines that an increase in cost of living or a special factor, such as limited availability of qualified attorneys for such proceeding justifies a higher rate." 26 U.S.C. § 7430(c)(1)(B)(iii). The Foundation's burden to recover its fees under Section 7430 at rates in excess of $150 per hour was to demonstrate for each of the attorneys billing time in this matter a "special factor" justifying deviation from the statutory maximum rate, or be limited to the statutory hourly rate cap for that particular attorney for reasonable time spent defending the Foundation.

The government contends that the Foundation's evidence to substantiate "prevailing market rates and usual billing rates" of its counsel and of similarly experienced attorneys in the field is "irrelevant." Opp. 10:21–11:14. Section 7430 inescapably starts from the premise that attorneys with tax expertise are the counsel whose fees are capped for purposes of shifting fees to the government. In addition: "In *Pierce*, the Supreme Court interpreted a substantially identical provision of the EAJA and held that 'the prevailing market rate' is not a 'special factor' which would justify an upward departure from the $75.00 hourly rate set by Congress." *Huffman*, 978 F.2d at 1149. Section 7430

was intended to provide reimbursement *in reasonable part*, not to provide full reimbursement of legal expenses. *See Dewalt v. Sullivan*, 963 F.2d 27, 29 (3rd Cir.1992); *see also Pierce*, 487 U.S. at 572, 108 S.Ct. 2541 ("whatever the local or national market might be," Congress set a cap it determined was sufficient public reimbursement for lawyers fees).

The Foundation provides several testimonial declarations regarding the unavailability of comparably qualified counsel at the statutory $150.00 hourly rate. However, their demonstration addresses only whether qualified counsel would be willing to undertake the representation at that rate, rather than the availability of counsel with the necessary qualifications to do so. For example, the declaration of attorney Charles H. Dick, Jr., a partner at Baker & McKenzie, LLP with 38 years of practice as a trial lawyer with significant experience "handling complicated business litigation, including securities fraud, business torts, professional liability, and fiduciary duty matters," states this action "appears to be a legally and factually complex matter, involving a range of issues, including civil litigation, assets freezes, tax law and criminal procedure." Dick. Decl. ¶¶ 2, 3, Lodg. 11. On that basis, he believes "there are relatively few attorneys in San Diego who possess the experience and capacity to defend a case such as this Action, particularly when they are given only three weeks to prepare." *Id.* His hourly billing rate is $595, and attorneys in his firm bill from $250 to over $600 per hour, rates he believes to be consistent with rates charged by comparable law firms in San Diego with experience in complex litigation matters. *Id.* ¶ 4. He represents he would not have accepted the defense of this action for $150 per hour, nor does he believe the Foundation would have been able at that rate to retain experienced and able trial lawyers in San Diego with the staff and capacity to address the numerous issues in the short time period allowed. *Id.* ¶ 5.

The Johnson Law Firm obtained similar declarations from attorneys at other prominent firms to substantiate the Foundation's contention it could not have engaged competent counsel to handle this litigation for $150 per hour. Each of those attorneys describes his significant experience handling complex litigation matters, and each opines he would not have agreed to defend this case at that rate nor would the Foundation likely have found competent counsel in San Diego who would. Their hourly rates range from $325 to $595. Lodgs. 12–15. Mr. Johnson himself declares his firm's hourly rates are "conservative when compared to those charged by other firms with similar experience for complex litigation matters in San Diego." Johnson Decl. ¶ 9. He states he "would not have agreed to represent the Foundation for $150 per hour," and he does not believe the Foundation "would have been able to retain experienced counsel in San Diego, or anywhere for that matter, who would be able to address the numerous issues involved in the time period for $150 per hour." Johnson Decl. ¶ 10, Lodg. 2.

The Connor & Winters firm obtained two declarations from Oklahoma attorneys with tax-related expertise, neither of whom believes the Foundation could have retained qualified tax counsel at a billing rate of $150 per hour in Tulsa, Oklahoma. Lodgs. 16, 17. Chicoine & Hallett solicited two other declarations from attorneys practicing tax law in Washington state. Each substantiates his considerable qualifications and attests to the expertise of the Chicoine & Hallett firm, the range of legal issues raised by the circumstances of this case, their own billing rates of $300 per hour and firm rates ranging from $180 per hour for junior associates to over $400 per hour for senior members. Neither be-

lieves the Foundation could have obtained competent counsel in Southern California for $150 per hour. Lodgs. 18–19. Sheppard Mullin also submits a 2004 Citigroup survey of average billing rates for equity partners at comparable law firms, contending overall, its firm's rates "are below market." Naughton Decl. ¶ 8.

The court rejects the materiality of the Foundation's "market rate" arguments for Section 7430 fee recoveries. The expertise and competence of the Foundation's legal team members is not disputed. The issue is the *fee shifting* provision of Section 7430 rather than the market value of the services provided. The Foundation establish that attorneys with comparable tax and complex litigation expertise generally charge much more than the statutory hourly cap. That circumstances does not qualify as a "special factor." *See Pierce*, 487 U.S. at 572, 108 S.Ct. 2541; *Huffman*, 978 F.2d 1139.

■ The court construes the Section 7430 "special factor" of "limited availability of qualified attorneys" for the particular proceeding to mean an actual shortage of qualified attorneys who could handle the case rather than an inability to retain qualified counsel *willing to take on the representation at the statutory maximum hourly rate. See, e.g., Powers v. Commissioner*, 43 F.3d 172, 183 (5th Cir.1995) (no special factor shown to justify an increased rate for litigating an attorneys' fees motion, even if some times a special factor warrants a higher award associated with litigating the underlying claim); *Huffman*, 978 F.2d at 1149–50. The declarations substantiate no shortage of qualified counsel locally or nationally to handle a matter like this one, but only that such counsel would not accept the representation for compensation capped at $150.00 per hour. *See, e.g., Bode*, 919 F.2d at 1049 ("The Supreme Court [in *Pierce* ] explained that the similarly worded exception for limited availability of qualified attorneys in the [EAJA] cannot mean simply that lawyers skilled and experienced enough to try a particular case are in short supply and cannot be hired at $75 per hour," and "Congress did not intend that the market-minimum rate should govern instead of the presumed statutory rate if the national or local market rate was above the statutory cap"); *Heasley v. Commissioner of Internal Revenue*, 967 F.2d 116, 124–25 (5th Cir.1992) (declining to find an abuse of discretion in the Tax Court's limiting of attorneys' fees to the statutory rate on grounds "that the 'going rate' did not qualify as a 'special factor' within the meaning of section 7430"), *citing, inter alia, Pierce*, 487 U.S. at 572, 108 S.Ct. 2541.

#### 4. *Special Training "Needful For The Litigation"*

■ Having eliminated tax expertise and extraordinary legal competency as Section 7430 "special factors," this court also finds special insider knowledge of the entity represented should similarly not qualify as a "special factor" warranting compensation above the statutory cap. Certain of the billing attorneys support the Foundation's effort to exceed that reimbursement cap by suggesting their status is analogous to in-house or corporate counsel to the Foundation and that such inside knowledge was very important in this case. *See, e.g.,* Will Decl, Coyle Decl. Recognizing such a relationship as a "special factor" would again operate to swallow the rule.

As noted by the Fifth Circuit:

[W]e believe that the Supreme Court in [*Pierce* ] intended to distinguish *nonlegal or technical abilities* possessed by, for example, patent lawyers and experts in foreign law, from other types of substantive specializations currently proliferating within the profession. In a sense, every attorney practicing within a narrow field could claim specialized knowledge.

*Perales v. Casillas,* 950 F.2d 1066, 1078 (5th Cir.1992); *see also Cervin,* 200 F.3d at 355 (the *Perales* court's "articulation of the 'limited availability' standard illustrates [the Fifth Circuit's] view that this is a very narrow exception," confirming that Circuit's conclusion that the "special factor" analysis requires "nonlegal or technical abilities").

An award in excess of the statutory rate is only appropriate where "lawyers skilled and experienced enough to try the case are [not only] in short supply," but there is also limited availability of "attorneys having some distinctive knowledge or specialized skill needful for the litigation in question." [*Pierce,* 487 U.S. at 573, 108 S.Ct. 2541.] The Ninth Circuit has distilled the Supreme Court's *Pierce v. Underwood* holding into a two-prong test: (1) the attorney must possess "distinctive knowledge and skills" and (2) the qualifications must be "in some way needed in the litigation and cannot be obtained elsewhere at the statutory rate."

*Garnes v. Barnhardt,* 2006 WL 249522 (N.D.Cal. Jan.31, 2006) (awarding attorneys' fees in excess of the EAJA statutory cap to counsel with distinctive knowledge of the social security scheme, policies, practices, and regulations in a challenge to the manner of the agency's application of a particular provision in a regulation, applying *Pirus,* 869 F.2d 536, but reducing the hourly rates for the two attorneys whose fees were shifted to the government to a rate below their billed rate).

## C. *Fees For Litigation Defense*

This case undeniably presented the Foundation with complex, multi-faceted issues to be rapidly researched and coordi-nated for presentation to defend on several fronts against the imposition of a crippling preliminary injunction. None of the claimed attorneys' fees is billed at a rate at or below the statutory hourly cap. The 21 attorneys claim hourly rates ranging from $230 to $530 per hour, in defending the merits of the case and, for ten of them, considerable additional time at their market rates to prepare the fees and costs application. "Special factor" deviation limitations preclude out of hand such an across-the-board excess award.[9] This lawsuit was active for four to six weeks. All time billed in 2005 was invested to pursue litigation expenses recovery. The Foundation has not demonstrated its entitlement to reimbursement of its attorneys' fees calculated at an hourly rate in excess of the statutory maximum.

Even if hourly rates for some of the Foundation's attorneys at rates higher than the statutory maximum were warranted, recovery at those attorneys' market rates would not necessarily be justified or justified for all the activities they billed. To find otherwise would convert the calculation to an inappropriate lodestar methodology. *See* Section II.B. As the government argues, if some "special factor" under Section 7430, excluding tax law expertise and complex litigation expertise, is demonstrated for purposes of a rate cap waiver, it does not follow that the attorney's usual hourly rate (as might be used in the lodestar calculation methodology) is the proper reimbursement rate. However, as the court has found the Foundation has not demonstrated entitlement to deviation from the statutory cap, the court need not reach the issue of an appropriate excess hourly rate.

In consideration of the "special factor" limitations, the court finds the Founda-

---

**9.** See also the government's objections to reimbursing the Foundation for attorney time spent working on non-legal matters such as press releases and board minutes. Opp. P & A p. 9, n. 6.

tion's recovery of fees from the government for its attorneys' work to defend this case is capped at the statutory hourly rate of $150.00. The total attorney time claimed by the Foundation for its defense, excluding the 325 hours of time spent to prepare the fees and costs application addressed below, is 622.1 hours.[10] *See* Dkt No. 150, p. 15. Those hours are substantiated as actually devoted to the Foundation's necessarily vigorous and intensive defense on the merits to avoid imposition of the government's preliminary injunction. The government does not challenge the number of attorney hours expended in defending on the merits. Accordingly, the total award for the 622.1 hours of claimed attorney time expended in that capacity at $150 per hour is $ 93,315.00.

### D. *Fees For Application Preparation*

■ "[R]easonable time spent litigating a fee award may be compensable" under Section 7430. *National Wildlife*, 870 F.2d at 547–48, *citing Cinciarelli v. Reagan*, 729 F.2d 801, 809 (D.C.Cir.1984). The Foundation claims 325 hours of attorney time,[11] or 34% of the nearly 950 total hours its attorneys billed in this case, to prepare the fees and costs application, at the normal billing rates for each of the ten participating attorneys, totaling a request for

government reimbursement of $85,316.50 solely for the application preparation occurring after the merits of the injunctive relief claims were resolved.[12] The supplemental briefing added 310 hours to the 15 hours included in the initial application expended to prepare the application points and authorities, with the Foundation thus seeking an additional $85,316.50 for fee application preparation alone. Dkt No. 150, pp. 15–16.

The government challenges that component of the Foundation's claim as unreasonable.

Although the United States agrees that the Foundation may recover "reasonable attorneys fees" incurred in pursuing its claim for attorneys' fees, the United States submits that it is not reasonable to have spent 8 attorney-weeks preparing the original 13–page memorandum and 4 short affidavits, and preparing the 14–page supplemental memorandum and 19 *pro forma* supplemental affidavits. Opp. 15:26–16:3.

The government objects to the claimed hours, but proposes no "reasonable" number of hours fairly compensable to pursue the Foundation's motion, only that it must be "substantially less than 325" hours. The Court agrees. The claimed 322 hours represent four forty-hour weeks more than

---

**10.** The Foundation initially requested reimbursement of 637.1 hours that appear to have included 15 hours of attorney time to prepare the initial application. The Court addresses all 325 hours claimed for the fee application and supplemental briefing in the next section.

**11.** 310 of the 325 hours were added for the supplemental briefing in support of the fees and costs claimed: 221.6 hours expended by the Conner & Winters firm; 44 hours expended by the Chicoine & Hallett firm; and 45.2 hours by the Johnson Law Firm. Mot. p. 15. The Foundation's original fees and costs application filed January 14, 2005 (Dkt No. 129) thus included 15 hours expended on the fee application.

**12.** "The Foundation previously requested recovery of $226,733.25 in attorneys' fees ...." Dkt No. 150 15:13–14. The only case activity subsequent to that application was the augmentation of the supporting documentation in support of the claimed fees and costs: "the Foundation seeks recovery of additional attorneys' fees and costs ...," bringing its total request for an "award [of] attorneys' fees in the amount of $312,049.75" (Dkt No. 150 15:21–16:2), a difference adding $85,316.50 to the claimed fees for the sole purpose of pursuing fees and costs recovery. The government's brief extracts detail from the Foundation's billings to show it seeks $90,700.50 in attorneys' fees billed after the case was dismissed. *See* Opp. P & A p. 8.

**1158**

the duration of the litigation on the merits, from the November 3, 2004 TRO to the December 3, 2004 denial of a preliminary injunction. Moreover, there is some indication in the backup documentation that not all the claimed time was expended on this application.[13]

■ The government also challenges the hourly rates sought to be applied to preparation of the fee application. As observed by the Fifth Circuit: "Even if some special factor existed to merit a higher award with regard to the underlying claim, there has been no showing that any special factor justifies an increased rate for litigating the attorney's fee motion. For example, an expert in tax law is not required to litigate such an issue." *Powers,* 43 F.3d at 183. Technical expertise of the type adequate to qualify as a "special factor" is not required for the compilation activities associated with presenting a fees and costs application. Accordingly, compensable hours to prepare the Foundation's fees and costs application will be reimbursed at $150 per hour rather than at the considerably higher rates billed by the participating attorneys.

■ Although setting a reasonable number of hours reimburseable by the government for the fee application necessarily will be less than a scientific calculation, the Court considers the authority cited by the Foundation. Hours to be excluded from reimbursement calculations include hours that are "excessive, redundant, or otherwise unnecessary.'" *U.S. v. Real Property Known As 22249 Dolorosa St.,* 190 F.3d 977, 985 (9th Cir.1999), *quoting Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Hours that are poorly documented or the result of overstaffing are also excludable. *Sorenson v. Mink,* 239 F.3d 1140, 1146

(9th Cir.2001) (distinguishing fee awards under statutes like the EAJA and Section 7430, containing explicit rate caps, from awards under statutes like 42 U.S.C. § 1988, where prevailing market rates are considered); *see also Jean,* 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134.

The fee application activity should have consisted essentially of compiling and authenticating billing records. The court finds a reasonable time to accomplish that activity in a case that only lasted four to six weeks is 20 (twenty) hours. As discussed above, the Court finds the Foundation's reimbursement is capped at the $150.00 per hour maximum rate set by Section 7430. The total recovery for this component of claimed fees is accordingly $3,000.00 (20 hours × $150 per hour). Each side shall bear its own costs for the supplemental legal briefing solicited by the court.

### III. CONCLUSION AND ORDER

For all the foregoing reasons, the Foundation's application for recovery of its fees and costs is **GRANTED IN PART** and **DENIED IN PART**. IT IS HEREBY ORDERED:

1. The Foundation's application to recover its claimed litigation costs in the total amount of $6,817.83 is reasonable and unopposed and is **GRANTED**.

2. The Foundation's application to recover 622.1 hours of attorney fees for all claimed time counsel spent defending the Foundation on the merits in this litigation is **GRANTED**. However, as no "special factor" has been demonstrated to warrant deviation from the statutory maximum rate, the recovery shall be at the Section 7430 hourly rate of $150.00, for a total recovery of $93,315.00 for that portion of its claim.

13. For example, the detailed billing records provided by the Johnson firm reflect time was spent in related to the *Receiver's* application for costs and fees. *See, e.g.,* Johnson Decl. Ex. A, entries for January 22, 2005, for February 28, 2005, and for March 5, 2005.

3. The Foundation's application to recover 325 hours of attorney time at the billed rates for the preparation of its application for fees and costs is **DENIED.** The court reduces the compensable time for that activity to 20 (twenty) hours, reimbursable at the Section 7430 rate of $150.00 per hour, for a total recovery of $3,000.00 for that portion of its claim.

4. The grand total award of litigation expenses the government shall reimburse the Foundation is accordingly $103,132.83.

**IT IS SO ORDERED.**